LARRY SLETTVET *v.* STATE OF INDIANA.

[No. 1071S297. Filed April 11, 1972.]

*James R. White,* New Castle, for appellant.

*Theodore L. Sendak,* Attorney General, *Michael Schaefer,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Larry Slettvet, appellant (defendant below), from a conviction for possession of dangerous drugs. Appellant was charged by indictment returned on March 9, 1971, and May 3, 1971, trial by jury commenced. On May 5, 1971, the jury returned a verdict of guilty and appellant was fined one hundred dollars ($100.00) and sentenced to one hundred twenty (120) days on the State Farm. Appellant filed a Motion to Correct Errors on July 13, 1971, which was overruled on July 21, 1971, and this appeal followed.

The major contention of error is that there is insufficient evidence that the substance in appellant's possession was, in fact, lysergic acid diethylamide (LSD) as charged in the indictment. The State presented only one witness in the cause and at the close of the State's case the appellant made a motion for a directed verdict which was denied.

In considering a question as to the sufficiency of the evidence this Court has repeatedly stated it will not weigh the evidence nor consider the credibility of the witnesses. Only that evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt the verdict will not be disturbed. *Valentine* v. *State* (1971), 257 Ind. 197, 273 N. E. 2d 543.

The evidence most favorable to the state is as follows. The State's only witness was Thelma Selman, the wife of the man who allegedly gave some LSD tablets to appellant. Thelma's husband, Buddy, in early January of 1971 acquired some purple tablets which he described as "eighty hits of purple haze acid." Thelma's knowledge as to the substance of the pills was acquired through hearsay only as she never tried these pills nor had she previously tried any other drug. Thelma said they looked like birth control pills and for all she knew they coud have been aspirin. Buddy took one of the pills the first night he acquired them. Thelma described Buddy's reaction to the pills, stating that he would just sit and laugh at everything that happened, that he would stare at the lights, and that he played his phonograph at a very high volume.

About a week later Buddy and Thelma were with the appellant at someone's apartment. Apparently, Buddy and appellant got in a lengthy discussion concerning the pills—they spoke of the description of the pills, what they were supposed to do and how long they would last. Buddy asked Thelma if it was okay if he loaned appellant "twenty-three hits of

acid." Apparently appellant did not have the money but was heard by Thelma to say he would sell them for three dollars a hit. Buddy said he was going to get the acid for appellant and he and appellant left. Later they returned and Thelma noted that appellant had some purple pills which looked exactly like those which Buddy had previously acquired. Appellant left the room with someone and when he came back in he gave Thelma three dollars and asked that fifty cents be given to his companion. Thelma did not see appellant any more that evening.

Following that evening Buddy allegedly took the pills "day and night for three weeks." Thelma said that he lost all track of time, that he could not discern when it was light, that he could not sleep, that he lost weight, and that he did not take a bath. He also became grumpy and at one point said that he wanted to kill himself. Thelma stated that at times Buddy was unable to drive because he could not distinguish between the colors of the stop lights. On one occasion Buddy was frying bacon and said he saw the vision of a pig. Buddy eventually wound up in a hospital.

The statute under which appellant was convicted was the Indiana Dangerous Drug Act, IC 1971, Title 16, Article 6, Chapter 8 (Ind. Ann. Stat. § 35-3331 *et seq.*). The definition of a dangerous drug is contained in IC 1971, 16-6-8-2 (Ind. Ann. Stat. § 35-3332(j) [1971 Supp.]) :

"J. 'Dangerous drug' means . . . (4) any hallucinogenic, psychedelic, phychotogenic drug or substance including but not limited to lysergic acid diethylamide, commonly known as LSD. . . ."

IC 1971, 16-6-8-3 (Ind. Ann. Stat. § 35-3333 [1971 Supp.]) reads in part:

"The following acts . . . are hereby declared unlawful except as provided in section 4: . . .

C.  The possession of a dangerous drug by any person, unless such person obtained such drug on the prescription of

a practitioner, or in accordance with subparagraph A(2) of this section."

The penalties for violation of the act are contained in IC 1971, 16-6-8-10 (Ind. Ann. Stat. § 35-3338 [1969 Repl.]) which has subsequently been amended:

"Any person who violates any provision of this act . . . shall, upon conviction thereof, be imprisoned in the state prison not less than one (1) year or more than ten (10) years, and fined in any sum not exceeding one thousand dollars ($1,000), or such person may be imprisoned in the county jail or state penal farm for any determinate period not exceeding one (1) year and fined in any sum not exceeding five hundred dollars ($500). . . ."

The question is whether there was sufficient competent evidence that what appellant possessed was LSD or, for that matter, any dangerous drug at all. The answer must be an emphatic no. The only evidence as to the substance was the hearsay evidence that the pills were "purple haze acid." The State's only witness had no previous experience with drugs at all and was certainly not an expert. LSD is a colorless, tasteless, and odorless substance (See 22 ALR 3d 1326 n. 1) so that none of the characteristics can be a basis for identifying the substance. Apparently no pills were found in appellant's possession by the police as none were submitted into evidence and no police officers testified. The only testimony which could possibly shed any light as to the nature of the substance possessed was the witness' testimony concerning her husband's apparent reaction to the consumption of these pills. Appellant was never seen by the witness taking any pills. Unlike drunkenness caused by alcohol, to which a layman can form an opinion, we cannot say that the reactions to LSD are within the knowledge of the general public. It can be nothing more than conjecture by the jury that the actions of the witness' husband were the result of the consumption of a dangerous drug.

The State contends that proof of the nature of the substance can be proved by circumstantial evidence and we agree with this contention. See, *Russell* v. *Superior Court for County of San Diego* (1970), 12 Cal. App. 3d 1114, 91 Cal. Rptr. 255; *State* v. *Dunn* (1970), 155 Mont. 319, 472 P. 2d 288; *State* v. *Pipkin* (1968), 101 N. J. Super. 598, 245 A. 2d 72; *People* v. *Galfund* (1968), 267 Cal. App. 2d 317, 72 Cal. Rptr. 917; *People* v. *Marinos* (1968), 260 Cal. App. 2d 735, 67 Cal. Rptr. 452; *People* v. *Chrisman* (1967), 256 Cal. App. 2d 425; 64 Cal. Rptr. 733, cert. den. 395 U. S. 985; *United States* v. *Bentvena* (2d Cir. 1963), 319 F. 2d 916; *United States* v. *Agueci* (2d Cir. 1962), 310 F. 2d 817; *Miller* v. *State* (1959), 168 Tex. Crim. App. 570, 330 S. W. 2d 466; *People* v. *Winston* (1956), 46 Cal. 2d 151, 293 P. 2d 40; *People* v. *Sykes* (1955), 44 Cal. 2d 166, 280 P. 2d 769, cert. den. 349 U. S. 934; *People* v. *Rios* (1954), 127 Cal. App. 2d 620, 274 P. 2d 163; *People* v. *Tipton* (1954), 124 Cal. App. 2d 213, 268 P. 2d 196; *People* v. *Candalaria* (1953), 121 Cal. App. 2d 686, 264 P. 2d 71. However, when the drugs themselves are not placed into evidence and there is no expert testimony based on a chemical analysis, then there must be testimony of someone sufficiently experienced with the drug indicating that the substance was indeed a dangerous drug. For instance, the case of *State* v. *Dunn, supra,* involved a conviction for the sale of LSD. No LSD was placed into evidence but the persons who purchased the drugs testified personally as to its effect on them and then a medical doctor testified that based on these reactions it was his opinion that the drugs taken were LSD. In *State* v. *Pipkin, supra,* involving the sale of heroin, the nature of the substance was proven by the testimony of long time addicts that their physiological reactions after injecting themselves with powder purchased from defendant was the same as they had previously experienced from heroin injections. In *People* v. *Marinos, supra,* an experienced police officer testified that a cigarette smoked by appellant was marijuana based in part on the odor and appearance of the

cigarette. *People* v. *Winston, supra,* involved a prosecution for furnishing marijuana to minors. There was testimony by the minors, who were frequent users of marijuana, that the cigarettes they acquired from defendant and subsequently smoked contained marijuana. There was also corroborating testimony of an expert concerning the appearance, taste, and effect of smoking marijuana. In *People* v. *Sykes, supra,* the *corpus delicti* of the crime of unlawfully furnishing marijuana to a minor was proven by the testimony of the prosecutrix that she had prior experience with marijuana and indicating its description and effect upon her.

After a diligent search we have been unable to discover a case where the nature of the substance in a drug prosecution has been proven by circumstantial evidence without opinion testimony from a witness thoroughly experienced with the drug involved. See, *Jenkins* v. *State* (1971), 46 Ala. App. 719, 248 So. 2d 758. This is only logical because the public is simply not that familiar with the nature and effect of most contraband drugs. In *People* v. *Kenny* (1971), 36 App. Div. 2d 477, 320 N. Y. S. 2d 972, a witness inexperienced with drugs who had smoked what had been identified to him as marijuana was competent to describe the appearance, taste, smell and effect of the substance which he smoked but was incompetent to identify the substance as marijuana. The testimony of this witness alone was held to be insufficient to support a conviction for the sale of marijuana. In the case at bar the State's witness could describe the apparent effect these pills had on her husband but that alone surely does not prove it was LSD. See also, *People* v. *Williams* (1962), 25 Ill. 2d 562, 185 N. E. 2d 686; *People* v. *McLean* (1961), 56 Cal. 2d 660, 365 P. 2d 403, 16 Cal. Rptr. 347, cert. den. 370 U. S. 958; *Cook* v. *United States* (9th Cir. 1966), 362 F. 2d 548; *Cano* v. *State* (Tex. Crim. App. 1970), 450 S. W. 2d 646; *People* v. *McChristian* (1966), 245 Cal. App. 2d 891, 54 Cal. Rptr. 324; *State* v. *Emmett* (1970), 77 Wash. 2d 520, 463 P. 2d 609.

We take judicial notice of the frightening rise of illicit drug

use occurring in this country which is rapidly approaching epidemic proportions. However, we cannot allow this fact to result in a lessening of the State's requirement of proving each element of the crime beyond a reasonable doubt for this requirement has long been a metaphysical cornerstone of our criminal law. Since the State did not prove the nature of the substance possessed by appellant it failed to prove an essential element of the crime, and it was error for the trial court to deny appellant's motion for a directed verdict at the close of the State's case in chief. We therefore reverse the judgment of the trial court and remand this cause with instructions to grant appellant's motion for a directed verdict.

Judgment reversed.

Arterburn, C. J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 280 N. E. 2d 806.