## STATE OF INDIANA *v.* CHUCK DOANE.

[No. 574S105. Filed June 5, 1974.]

*Theodore L. Sendak,* Attorney General, *Malcolm H. Auker-man,* Prosecuting Attorney, Vermillion County, *Charles J. Eusey,* Deputy Prosecuting Attorney, Vermillion County, for appellant.

*N. George Nasser,* of Terre Haute, for appellee.

## On Petition To Transfer

DeBruler, J.—On June 9, 1971, the Vermillion County Grand Jury returned an indictment charging that Charles Doane, "on or about May 23, 1971, at the County of Vermillion in the State of Indiana did then and there unlawfully and feloniously have in his possession a dangerous drug to-wit: Amphetamines." The defendant subsequently filed a Motion to Quash the indictment on the grounds that both the indictment and the statute on which it was based failed to describe the offense with sufficient certainty and that the statute unconstitutionally attempted to incorporate sections of Federal laws and regulations. The statute under which Doane was charged defined a dangerous drug as follows:

"J. 'Dangerous drug' means (1) any drug the label of which is required by federal law to bear the statement: 'Caution: Federal law prohibits dispensing without a pre-scription'; (2) any drug which, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not

safe for use except under the supervision of a practitioner licensed by law to prescribe or administer such drug; or (3) a new drug which is limited by an effective application under state law to use under the professional supervision of a practitioner licensed by law to prescribe or administer such drug; (4) any hallucinogenic, psychedelic, psychotogenic drug or substance including but not limited to lysergic acid diethylamide, commonly known as LSD; or (5) any drug appearing on the consolidated list of DACA drugs compiled in compliance with the drug abuse control amendments of 21 U.S.C., sec. 321, subsec. (v), P. L. 89-74, sec. 3(a), or any supplement thereof." Acts 1969, ch. 225, being Burns § 35-3332(J).

The Vermillion Circuit Court, Honorable James F. Gallagher presiding, granted the defendant's motion on the grounds that the Act, which was in existence at the time of the offense,[1] "does not even mention amphetamines and certainly does not define it as a dangerous drug" and also because both the statute and the indictment failed to "be sufficiently explicit to enable a person of ordinary intelligence to understand its provisions."

The State appealed this ruling and the Court of Appeals, First District, issued an opinion found at 299 N.E.2d 185, in which it held that the trial court erred in granting the motion on the grounds that the State statute contains within it, in subsections (1) and (5), a reference to Federal laws regulating amphetamines and the trial court should have taken judicial notice of the contents of the incorporated Federal law. Doane has filed a Petition to Transfer from the Court of Appeals alleging that the reference to Federal law is not of sufficient clarity to meet the constitutional requirements of specificity in criminal statutes. We now grant the Petition, vacate the judgment of the Court of Appeals and affirm the ruling of the trial court.

It is apparent that the State statute in effect at the time of

---

1. In April of 1971, the Indiana General Assembly passed P. L. 212, a new dangerous drug law. However the Act did not contain an emergency clause and consequently did not become effective until September of that year.

the alleged offense attempted in subsections (1) and (5) to incorporate by reference certain provisions of Federal law concerning drugs. There is nothing inherently unconstitutional with the Indiana Legislature adopting Federal statutory schemes by incorporating them in sections of State statutes. A state is constitutionally capable of scrutinizing and approving Federal legislation providing that the reference to the provisions being incorporated meets certain standards of clarity. The requirement of specificity in incorporation is designed to insure two important interests in legislation: It serves as one form of assurance that the state legislature is not abrogating its constitutional responsibility to exercise the legislative decision making of this state to another legislative body by a delegation of responsibility that is overly broad and ill-defined. It also is designed to insure that the statute which results from the incorporation meets the due process requirements of specificity. The second vagueness problem, of course, is particularly acute when the statute seeking to affect the incorporation is criminal in nature.

Naturally, the most explicit manner of affecting such an incorporation is for the incorporating legislation to make specific reference and citation to the act sought to be incorporated. This has long been the requirement for a successful incorporation of sections of another statute followed in this State:

> "[O]ne statute may adopt a part of, or all of, another law or statute by a specific and descriptive reference thereto, and the effect is the same as if the law or statute or the part thereof adopted had been written into the adopting statute." *Mogilner* v. *Metropolitan Plan Commission* (1957), 236 Ind. 298, 140 N.E.2d 220, quoting from *State ex rel. Board of Com'rs of Hendricks County* v. *Board* (1908), 170 Ind. 595, 85 N.E. 513.

The standard for incorporation by reference in Indiana therefore requires that a statute may adopt a part or all of another statute only by a specific reference to that

section sought to be incorporated. *Keener* v. *City of Kendallville* (1963), 244 Ind. 87, 191 N.E.2d 6.

Subsection (5) of § 35-3332(J) obviously meets this requirement of specificity by its specific reference to 21 U.S.C. 321(v), and thus the incorporation of that Federal statute would seem to succeed. Also 21 U.S.C. 321(v) does list amphetamines within its prohibition. However the precarious nature of legislation through incorporation is made apparent here by the fact that on the date of the offense alleged in the indictment 21 U.S.C. 321(v) had been repealed by Congress. On October 27, 1970, Congress approved the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P. L. 91-513) and § 701 of that Act specifically repealed 21 U.S.C. 321(v). The same Act made the repealer section effective, "on the first day of the seventh calendar month that begins after the day immediately preceding the date of enactment," (P. L. 91-513, § 704) which would presumably be May 1, 1971. On the date of the alleged offense therefore the section of Federal law sought to be incorporated by subsection (5) of the existing State Act had ceased to exist by operation of a repealer clause in a subsequent Federal statute.

The other part of § 35-3332(J) relied on by the Court of Appeals as incorporating certain Federal laws defining amphetamines is subsection (1). This subsection does not attempt to indicate in any specific manner what sections of Federal law are sought to be incorporated. There are no references to any sections of the United States Code or to any act of Congress or even to which title of the Code might contain the warning requirements. Anyone seeking to find which drugs might require such a warning is left with no path to follow to the applicable section sought to be incorporated. The maze which confronts a citizen seeking to discover the identity of the drugs covered under subsection (1) is a prime example of the evil sought to be avoided by requiring specific references when other laws are sought to be incorporated.

21 U.S.C. § 353 (b) (4) states that drugs subject to 21 U.S.C. § 353 (b) (1) must carry the statement, "Caution: federal law prohibits dispensing without prescription." 21 U.S.C. § 353 (b) (1) covers drugs which are habit forming and to which 21 U.S.C. § 352 (d) applies. No specific mention of amphetamines are made in any of these sections including 21 U.S.C. § 352 (d). However in 21 U.S.C. § 321 (v) (2) amphetamines are defined as being habit forming within the meaning of 21 U.S.C. § 352 (d) and thus they become subject to the several statutes set out above culminating in the one requirement set out in § 353 (b) (1) and obliquely referred to in subsection (1) of the State statute.

It is apparent that the attempted incorporation by the State statute of certain sections of Federal law by the language in subsection (1) must fail since it does not meet the requisite standard of specificity as to which sections are sought to be incorporated. Incorporations of sections of another legislature's statutes must give a specific description of the sections to be incorporated and the incorporating language must clearly indicate the path to be followed to the section sought to be incorporated. In subsection (1) there is no specific citation to the sections sought to be incorporated, nor even a generally used and understood common law term which might provide guidance to that section. The incorporation fails because it neglects to adequately specify what it seeks to incorporate.

We hold, therefore, that the Court of Appeals was in error when it reversed the circuit court here. The sustaining of defendant's motion to quash on the grounds that the indictment and the statute were overly vague should have been affirmed. The Court of Appeals cannot rely on subsection (5) since, although the reference is specific enough to meet our standards for incorporation, the section of Federal law incorporated had been repealed at the time of the alleged offense. Moreover, the reliance on subsection (1) can-

not prevail because the reference to the section of Federal law is so vague and unspecific as to fail at the attempted incorporation.

The judgment of the trial court is therefore affirmed.

Hunter and Prentice, JJ., concur; Givan, J., dissents with opinion in which Arterburn, C.J., concurs.

## DISSENTING OPINION

GIVAN, J.—I respectfully dissent from the majority opinion in this case, although the majority opinion correctly points out that the Court of Appeals' decision appears to rest upon a Federal statute which had been repealed. As is pointed out in the majority opinion, this was not the only section to which reference might be made to determine a correct definition of "a dangerous drug."

The majority opinion takes the position that it is impossible to determine what in fact is a dangerous drug by reference to the Federal statutes. This is a difficulty which has not been experienced by the Federal authorities nor by many states which have used statutes very similar to the Indiana statute. It is difficult to believe that a person of good faith would be at a total loss to know what constituted a dangerous drug by Federal definition.

The Indiana statute makes adequate reference to all of the Federal statutes and regulations pertinent to such issue.

I agree with the result of the opinion of the Court of Appeals and for that reason would deny transfer in this case.

Arterburn, C.J., concurs.

NOTE.—Reported at 311 N.E.2d 803.