KENNETH WHITE *v.* STATE OF INDIANA.
[No. 2-673A142. Filed September 26, 1974.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Kenneth White

(White) appeals from a trial court conviction of possession of a narcotic drug, claiming the evidence was insufficient to prove that the drug he possessed (Methadone Hydrachloride) was a "narcotic drug" as defined by the Uniform Narcotic Drug Act (the Act).[1]

We reverse.

## FACTS

The facts and evidence most favorable to the State are:

On December 30, 1971, Indianapolis police narcotics officers, armed with warrants for White's arrest on a narcotics charge, converged upon White's residence in Indianapolis and apprehended him inside the house near the kitchen.

One of the arresting officers (John Grable) discovered in the kitchen (in plain view) a saucer containing seven tablets.

At trial he testified that he performed a preliminary field test on the tablets at the scene, which disclosed the presence of the drug Methadone Hydrachloride (Methadone hereafter), which he described as a "synthetic narcotic".

The only other identifying and descriptive testimony was given by Dr. Carl Phillips, a forensic chemist employed by the Indianapolis Police:

"Q. Now Doctor between January 24th, and January 27th, did you have occasion to analyze the contents?
A. Yes I did.
Q. Of State's Exhibit No. 1?
A. Yes, I did.
Q. Did you find,what were the results?
A. I found methadone.

\* \* \*

Q. And, exactly what is methadone hydrochloride?
A. It is classified as a synthetic narcotic under schedule 2 of the Federal Schedule.
Q. And what is it?
A. I really don't feel qualified as a medical expert.

---

1. Commonly referred to as the 1935 Narcotics Act, IC 1971, 35-24-1-1, Ind. Ann. Stat. § 10-3519 *et seq.* (Burns 1974 Supp.), repealed by Acts 1973, P.L. 335, § 6. For present law see, IC 35-24.1-1-1, Ind. Ann. Stat. § 10-3558 *et seq.* (Burns 1974 Supp.).

Q. But you are qualified to testify as a chemist?
A. Yes.
Q. And you do know what it is?
A. Yes."

Upon this evidence, the trial court found White guilty of violating the Act (possession of a narcotic drug) and he was thereafter given a suspended sentence of two to ten years imprisonment and placed on probation.

He nevertheless appeals.

### ISSUE

Was the evidence sufficient to bring the drug Methadone within the Act's definition of a "narcotic drug"?

White contends that the State failed to present any evidence bringing Methadone within Indiana's definition of a narcotic drug.

The State replies that Phillips' reference to Federal law in general alerted the trial court to judicially note that Methadone is within the Act's definition of a narcotic as a matter of law. To support this contention, the State points to a regulation[2] promulgated under authority of the Act by the Indiana Board of Pharmacy which incorporates by reference the entire body of Federal narcotics law, said by the State to include a subsequently enacted Federal statute[3] which lists Methadone as a narcotic drug.

Because we reverse, other issues raised by White need not be considered. *Burk* v. *State* (1971), 257 Ind. 407, 275 N.E.2d 1; *Cook* v. *Am. States Ins. Co.* (1971), 150 Ind. App. 88, 275 N.E.2d 832; *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N.E.2d 127.

### DECISION

CONCLUSION—It is our opinion that the evidence was not

---

2. Ind. Bd. of Pharmacy Reg. 19, § 1, adopted May 14, 1962, filed June 18, 1962, Ind. Admin. Rules & Reg. Annot., § (10-3519)-2.

3. 21 U.S.C., §§ 802 and 812 (Schedule II(b)), P.L. 91-513, effective October 27, 1970.

sufficient to prove Methadone is a narcotic drug as that term was defined by the Indiana Act.

It is an elementary principle of criminal law that a conviction will be reversed as a matter of law if the State has failed to present evidence proving an essential element of the crime. *Buckner* v. *State* (1969), 252 Ind. 379, 248 N.E.2d 348; *Myers* v. *State* (1968), 251 Ind. 126, 239 N.E.2d 605; *Heglin* v. *State* (1957), 236 Ind. 350, 140 N.E.2d 98.

The necessity of proof is no less essential for drug-related offenses than for other offenses. The statutes that provide penalties for drug-related offenses do so only with respect to *contraband* drugs defined as such by law. *Burk* v. *State* (1971), 257 Ind. 407, 275 N.E.2d 1. Thus, it has been stated by our courts (and those of other states) that the prosecution must prove, as an essential element, that the substance involved is indeed a proscribed drug within the applicable statutory definition. *Slettvet* v. *State* (1972), 258 Ind. 312, 280 N.E.2d 806; *State* v. *Starks* (1967), Mo., 419 S.W.2d 82; *Casey* v. *State* (1973), Alaska, 509 P.2d 285; *People* v. *Williams* (1972), 9 Ill. App. 466, 292 N.E.2d 204; *Edelin* v. *United States* (1967), D.C. Ct. App., 227 A.2d 395; *Zide* v. *State* (1968), Fla. App., 212 So.2d 788; *Cert. den'd*, 394 U.S. 911;

See also,

*People* v. *Donnelly* (1916), 173 App.Div. 713, 159 N.Y.S. 690; *People* v. *Smith* (1971), 36 App.Div.2d 746, 320 N.Y.S. 2d 486.

In view of the testimony given that the drug possessed by White, Methadone, was a "synthetic narcotic" and a synthetic narcotic under schedule 2 of the Federal Schedule "we turn to the Act which defines contraband drugs:

"(a) *'Narcotic drugs' means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:*

1. *Opium* (defined to include 'morphine, codeine, and heroin, and any compound, manufacture, salt, derivative, mixture, or preparation of opium . . .'), *isonipecaine, coca leaves,* and *opiate;*

2. Any compound, manufacture, salt, derivative, or preparation of opium, isonipecaine, coca leaves or opiate; and

3. Any substance and any compound, manufacture, salt, derivative, or preparation thereof which is chemically identical with any of the substances referred to in paragraphs 1 and 2 of this subsection.

 (b) *The term 'narcotic drugs' shall also mean,* but shall not be limited to, *any drug which the Indiana board of pharmacy,* after reasonable notice and opportunity for hearing, *shall determine has an addiction-forming or addiction-sustaining quality similar to that of any narcotic drug as defined in subsection (a)* of IC 1971, 35-24-1-1 [this section]. In the rules and regulations adopted by the board under the provisions of IC 1971, 4-22-2 [§§ 60-1501—60-1511], as said chapter may hereafter be amended, *the Indiana board of pharmacy shall issue a list of such narcotic drugs and proclaim them to be narcotic drugs* as defined by this chapter [§§ 10-3519—10-3543a]. In the determination that any such drug is a narcotic drug, *the pharmacy board may take into consideration the fact that such drug has been determined to be a narcotic drug by the federal narcotics law,* as has been determined to be a narcotic drug by 'Presidential Proclamation'." (emphasis supplied)

IC 1971, 35-24-1-1, Ind. Ann. Stat. § 10-3519 (13) as further defined by (12).

The term "narcotics" is a generic term applicable to various addiction-forming or addiction-sustaining drugs. Consequently, the Act limits contraband narcotics to:

 1) the drugs specifically listed (opium, isonipecaine, coca leaves, and opiate) and other non-enumerated drugs chemically identifiable with them (subparagraph (a)), and

 2) other similar drugs which may appear on a list issued by the Indiana Board of Pharmacy (subparagraph (b)).[4]

---

4. In exercising this authority, the Board is permitted to consider Federal narcotics law; however, it may not redefine the term narcotic drug. [*Burk* v. *State, supra.*].

*As to Subparagraph (a):*

If a drug is identified by a name which is specifically designated as a narcotic by the Act, such as heroin or morphine, a conviction may be upheld as the trial court need only refer to the exact words of the statutory definition and determine the substance is a narcotic as a matter of law. *See, Patterson v. State* (1970), 255 Ind. 22, 262 N.E.2d 520 (heroin) ; *Wilson v. State* (1959), 240 Ind. 66, 161 N.E.2d 484 (heroin) ; *Winfield v. State* (1967), 248 Ind. 95, 223 N.E.2d 576 (marijuana, within the statutory definition at the time) ; *Turner v. State* (1967), 248 Ind. 501, 229 N.E.2d 469 (marijuana) ; *Pinkston v. State* (1968), 251 Ind. 306, 241 N.E.2d 138 (morphine) ; *Glenn v. State* (1972), 154 Ind. App. 474, 290 N.E.2d 103 (heroin) ; *Taylor v. State* (1962), 172 Tex. Crim. App. 461, 358 S.W.2d 124 (expert testimony establishing that dolophine, which was not listed by the statute, was a synonymous trade name for amidone and methadone, amidone being specifically listed in the statute) ; *People v. Alexander* (1971), 26 Mich. App. 321, 182 N.W.2d 1.

Similarly, if the substance, as identified, is not specifically enumerated by the Act, the State may nevertheless establish it as a legally defined narcotic drug by submitting some additional extrinsic evidence describing its chemical identity, characteristics, ingredients, or derivation so as to bring it within the Act's definition. *See, Merritt v. State* (1964), 245 Ind. 362, 198 N.E.2d 867 (Paregoric, shown to contain opium) ; *Stanley v. State* (1969), 252 Ind. 37, 245 N.E.2d 149 (testimony establishing substance [Dilaudid] as a "derivative of opium") ; *Neusbaum v. State* (1967), 249 Ind. 297, 230 N.E.2d 772 (Codeine Sulfate, shown to be a derivative of opium) ; *Allen v. State* (1972), Tex. Crim. App., 487 S.W.2d 120 (Demoral, identified with isonipecaine) ; *State v. Livingston* (1970), 2 Or. App. 587, 469 P.2d 632 (Numorphan, brought within the statutory definition of opium by expert testimony).

Methadone, as described in the testimony given, obviously does not fit into either of these two categories, so the State was obliged to go further with its proof in order to provide an evidentiary basis from which the trial court could find that White possessed a narcotic drug within the meaning of the Act. This it failed to do.

No evidence was presented which described Methadone either as a "derivative or preparation of" or as "chemically identical with" opium (and its included drugs), isonipecaine, coca leaves, or opiates.[5]

In sum, the prosecution failed to bridge an evidentiary gap. Methadone was not established as a narcotic drug under sub-paragraph (a).

The gap may not be closed by resort to the doctrine of judicial notice. Such a step would require the trial court, from its own knowledge, to note this particular drug's chemical composition and characteristics. Evidentiary proof of an essential element of a crime may not be so easily eliminated. *Fletcher Savings and Trust Co.* v. *American State Bank of Lawrenceburg* (1925), 196 Ind. 118, 147 N.E. 524; *Walton* v. *Wilhelm* (1950), 120 Ind. App. 218, 91 N.E.2d 373.

*See also,*

*Carrier* v. *State* (1949), 227 Ind. 726, 89 N.E.2d 74; *People* v. *State* (1930), 202 Ind. 177, 172 N.E. 902.

Moreover, judicial notice, as a general rule, is restricted to matters of common public knowledge, *Barker* v. *State* (1932), 204 Ind. 230, 183 N.E. 551; *Moorehead* v. *State* (1933), 204 Ind. 307, 183 N.E. 801; *State* v. *Louisville and Nashville Railroad Co.* (1911), 177 Ind. 553, 96 N.E. 340, . . . a description that does not apply to the chemistry of drugs such as Methadone Hydrachloride:

---

5. Under present law, the necessity of additional proof has, to a great extent, been removed by the Controlled Substances Act, specifically IC 35-24.1-2-6(c)(11), listing Methadone as an opiate, a controlled substance. Nevertheless, this subsequent classification of the definition of prescribed drugs has no saving effect upon this case which arose under a different statute.

". . . [T]he public is simply not that familiar with the nature and effect of most contraband drugs." [*Slettvet* v. *State* (1972), 258 Ind. 312, 280 N.E.2d 806 at 809]."

*As to Subparagraph (b):*

Carrying out the authority given it by subparagraph (b), the Indiana Board of Pharmacy issued the following regulation which attempted to incorporate by reference Federal narcotics law *without specifically referring to the statutory sections sought to be incorporated:*

"Federal narcotics rules adopted by reference. All rules and regulations of the United States government pertaining to narcotics and all executive proclamations of the president of the United States pertaining to narcotics are hereby adopted by reference." [Burns Ind. Admin. Rules & Reg. § (10-3519)-2] (hereafter referred to as Regulation 19).

If Methadone had been on the Federal list when Indiana sought to incorporate it,[6] and if this regulation successfully incorporated the Federal Schedule, then Methadone would, as a mater of law, be a specifically listed narcotic drug under the Act just as though it had been specifically listed in subparagraph (a).

But if the Federal definition was not so incorporated, showing Methadone as a narcotic under Federal law would have no effect whatsoever.

Thus, the problem is one of law—Did Regulation 19 validly incorporate the Federal statutory definition of narcotic drug into Indiana law?

*State* v. *Doane* (1974), 262 Ind. 75, 311 N.E.2d 803, makes short shrift of this question. Considering a statutory definition of a "dangerous drug" which, like Regulation 19, attempted to incorporate Federal law without specific reference to any Federal statute, Justice DeBruler emphasized the

---

6. Methadone was added to the Federal list (21 U.S.C., §§ 802 and 812, *supra*), on October 27, 1970, and Indiana's purported incorporation was prior thereto—May 14, 1962 [Ind. Admin. Rules & Reg. Annot., § (10-3519)-2].

specificity required to incorporate sections of Federal statutes into Indiana law:

> "There is nothing inherently unconstitutional with the Indiana Legislature adopting Federal statutory schemes by incorporating them in sections of State statutes. A state is constitutionally capable of scrutinizing and approving Federal legislation *providing that the reference to the provisions being incorporated meets certain standards of clarity.*
>
> \* \* \*
>
> The standard for incorporation by reference in Indiana therefore requires that *a statute may adopt a part or all of another statute only by a specific reference to that section sought to be incorporated. Keener* v. *City of Kendallville* (1963), 244 Ind. 87, 191 N.E. 2d 6.
>
> \* \* \*
>
> [Subsection (1)] *does not attempt to indicate in any specific manner what sections of Federal law are sought to be incorporated.* There are *no references to any sections* of the United States Code or to any act of Congress or even to which title of the Code might contain the warning requirements. Anyone seeking to find which drugs might require such a warning is left with no path to follow to the applicable section sought to be incorporated.
>
> \* \* \*
>
> It is apparent that *the attempted incorporation* by the State statute of certain sections of Federal law by the language in subsection (1) *must fail since it does not meet the requisite standard of specificity as to which sections are sought to be incorporated.*" (emphasis supplied) 311 N.E.2d at 805-807.

Regulation 19 suffers from the same infirmities as the statutory provision in *Doane*.

We reach this conclusion mindful of *Skaggs* v. *State* (1973), 260 Ind. 180, 293 N.E.2d 781, in which the Supreme Court upheld a conviction under the Dangerous Drug Act even though the State produced no evidence that the substance possessed by the defendant (Amphetamine) was on the Federal list. However, the statute in *Skaggs* specifically incorporated a Federal statute by section and thereby met the standard of clarity demanded by *Doane*. [See, *Doane, supra,* 311 N.E.2d at 806].

This conviction cannot be upheld for the reasons indicated. Accordingly, the judgment of the trial court is hereby reversed and the cause remanded to the trial court for further proceedings consistent with our decision herein.

Sullivan, P.J. and Garrard, J., concur.

NOTE.—Reported at 316 N.E.2d 699.