**Richard P. BARNETT, Sr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 84A01–9102–CR–33.**

Court of Appeals of Indiana, First District.

Sept. 26, 1991.

Transfer Denied Dec. 5, 1991.

R. Mark Inman, McShane & Inman, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Richard P. Barnett, Sr., was convicted of Count I, possession of a schedule III controlled substance with intent to deliver, a Class B felony;[1] Count II, possession of a schedule IV controlled substance with intent to deliver, a Class C felony;[2] and two counts of possession of a schedule IV controlled substance, both Class D felonies.[3] The trial court merged all convictions into Count I, possession of a schedule III controlled substance with intent to deliver. Barnett appeals his conviction, and raises the following issues for our review, which we restate as:

I. Whether the evidence was sufficient to support his conviction of possession of a schedule III controlled substance with intent to deliver.

II. Whether he had ineffective assistance of trial counsel.

We affirm in part, and reverse in part.

1. IND.CODE 35–48–4–2

2. IND.CODE 35–48–4–3

3. IND.CODE 35–48–4–7

### FACTS

The facts most favorable to the verdict reveal on the night of February 7, 1990, undercover officer Trooper Burton of the Indiana State Police, with the help of a confidential informant, purchased one ounce of marijuana from Barnett. Burton paid Barnett $125 for the drugs. Burton made an additional buy from Barnett on the night of February 20, 1990, paying $160 for one ounce of marijuana and ten tablets of Valium. Later that night, Burton told Officer Newport of the Terre Haute Police Department about the buys. Newport was investigating Barnett for suspected drug activity. With the information obtained from Burton and from surveillance of Barnett's house, Newport obtained a search warrant for the residence. He and a group of officers executed the warrant in the early morning of February 21, 1990.

Among the items seized was a pill bottle containing nine white tablets with the name "Mildred Arney" on the prescription label.[4] A chemical analysis revealed the nine tablets were acetaminophen with codeine. In addition, five tablets of acetaminophen with codeine wrapped in a cellophane cigarette package wrapper were found in Barnett's pocket. Other controlled substances and drug paraphernalia were also recovered; however, the trial court merged all of Barnett's convictions into possession of a schedule III controlled substance, acetaminophen with codeine, with intent to deliver.

### DISCUSSION AND DECISION

#### I

Barnett argues the evidence was insufficient to support his conviction of possession of a schedule III controlled substance with intent to deliver. When reviewing a challenge to sufficiency of the evidence to sustain the verdict, we do not reweigh the evidence or judge the credibility of the witnesses. *Elliott v. State* (1990), Ind.App., 560 N.E.2d 1266. We are bound by the evidence most favorable to the verdict, and we will reverse the trial court only if there is not substantial evidence of probative value to support the verdict. *Id.*

It is a well-settled principle of criminal law a conviction will be reversed as a matter of law if the State fails to prove an essential element of the crime. *White v. State* (1974), 161 Ind.App. 568, 571, 316 N.E.2d 699, 701. With respect to offenses involving controlled substances, the State must prove, as an essential element, the proscribed drug falls within the applicable statutory provision. *Id.* If a drug is identified in court by a name specifically designated as a controlled substance by the Indiana Code, then the State has proven as a matter of law the drug is a controlled substance. *Id.* 316 N.E.2d at 702. If the substance is not specifically enumerated by the Code as a controlled substance, the State must offer extrinsic evidence to prove the substance falls within the Code's definition. *Id.* at 703.

In this case, Barnett was convicted of possession of a schedule III controlled substance with intent to deliver pursuant to IND.CODE 35–48–2–8. The code provision provides, in pertinent part:

(e) Narcotic Drugs. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing any of the following narcotic drugs, or their salts calculated as the free anhydrous base or alkaloid, in the following limited quantities:

(1) Not more than 1.8 grams of codeine, per 100 milliliters or not more than 90 milligrams per dosage unit, with an equal or greater quantity of an isoquinoline alkaloid of opium.

(2) Not more than 1.8 grams of codeine, per 100 milliliters or not more than 90 milligrams per dosage unit, with one (1) or more active, nonnarcotic ingredients in recognized therapeutic amounts.

. . . .

---

**4.** Mrs. Arney was Barnett's friend. She stayed with him three nights in January of 1990 when she had problems at home, and she needed someone to watch her daughter while she worked. *Record* at 598.

(f) The board shall except by rule any compound, mixture, or preparation containing any stimulant or depressant substance listed in subsections (b) through (e) from the application of any part of this article if the compound, mixture, or preparation contains one (1) or more active medicinal ingredients not having a stimulant or depressant effect on the central nervous system, and if the admixtures are included therein in combinations, quantity, proportion, or concentration that vitiate the potential for abuse of the substances which have a stimulant or depressant effect on the central nervous system.

At trial, Fred Huttsell, a chemist with the Indiana State Police laboratory, testified that he conducted a chemical examination of the substances seized in Barnett's house during the search. He identified the nine tablets found in the prescription bottle as, "Codeine, which is a controlled substance, and also present was a drug called Acetaminophen, which is not a controlled substance." *Record* at 559. In explaining why both drugs were present in the white tablets, Huttsell stated, "It is a normal drug combination ... made to resemble the product Tylenol with Codeine.... [T]hey cannot call it by the trade name of the product, so they call it Acetaminophen with Codeine, it is a combination of the same tablets." *Record* at 560–61.

■ As a matter of law, we disagree with Huttsell's blanket classification of codeine as a schedule III controlled substance. Codeine is not specifically designated a schedule III controlled substance in the Indiana Code in all cases. In fact, if acetaminophen is an "active medicinal ingredient not having a stimulant or depressant effect on the central nervous system," and if there is no potential for abuse of the tablets, the tablets may be excepted from schedule III pursuant to IND.CODE 35–48–2–10(f). To bring the drug within the Code's provisions, therefore, additional extrinsic evidence regarding the quantity of codeine by weight and chemical properties of the compound or mixture is required.

■ No testimony was given in this case regarding the quantity of codeine present in each tablet as required by IND.CODE 35–48–2–8. In addition, the State did not prove acetaminophen is an "isoquinoline alkaloid of opium," IND.CODE 35–48–2–8(e)(1), or that the codeine was mixed with "one or more active, nonnarcotic ingredients in recognized therapeutic amounts." IND.CODE 35–48–2–8(e)(2). Even if acetaminophen with codeine is recognized by chemists as a schedule III controlled substance, the State may not rely on the doctrine of judicial notice to meet its evidentiary burden regarding the drug's chemical composition and characteristics. *White, supra.*

The State's failure to prove that acetaminophen with codeine is a schedule III controlled substance constitutes failure to prove an essential element of the offense. Accordingly, we reverse Barnett's conviction of Count I, possession of a Schedule III controlled substance with intent to deliver. Consequently, we need not address whether the evidence was sufficient to support finding Barnett had the requisite intent to deliver. The merger of Counts II, III, and IV into Count I is hereby set aside.

## II

Next, Barnett argues he had ineffective assistance of trial counsel. Specifically, he argues his counsel was ineffective in not challenging the validity of the search warrant. Furthermore, he argues his counsel invited improper appointment of a special judge.

■ When reviewing competency of counsel, there is a strong presumption counsel is competent, which requires strong and convincing evidence to rebut. *Williams v. State* (1987), Ind., 508 N.E.2d 1264. On review, we will not speculate about what strategy may have proven to be the most favorable to the defendant. *Berry v. State* (1990), Ind.App., 561 N.E.2d 832. Barnett must show his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* He must also show his attorney's failure to function was so preju-

dicial that it deprived him of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ Barnett argues his counsel should have challenged the search warrant because the regular judge, Judge Eldred, heard and signed the warrant, yet the Judge may have had a conflict of interest. Bald assertions of error do not establish ineffectiveness of trial counsel absent proof in the record supporting the allegations. *Battles v. State* (1985), Ind., 486 N.E.2d 535, 539. In this case, there is no evidence Judge Eldred had a conflict of interest. In fact, the record reveals that Judge Eldred transferred this case to Special Judge Yelton because Barnett wanted this case to be consolidated with his other cases pending before the special judge. *Record* at 9. We hold, therefore, there was no error in failing to challenge the search warrant, and, accordingly, there is no colorable claim of ineffective assistance of counsel.

■ Next, Barnett asserts his counsel was ineffective because she invited the improper appointment of a special judge. Barnett bases his complaint on the failure of the trial court to set a panel of prospective special judges in accordance with Ind.Trial Rule 79(4). To prove violation of this rule was fundamental error, Barnett must show actual bias or prejudice on the part of the special judge. *Lucas v. State* (1990), Ind., 552 N.E.2d 35, 37. Barnett offers no evidence Special Judge Yelton was biased or prejudiced when presiding over this case; he merely alleges the rule was violated. Without proof of resulting harm, we will not now hear Barnett complain about the appointment he requested.

■ In addition, our supreme court has explicitly held if counsel makes a deliberate tactical choice regarding selection of a special judge, the defendant will not later be deemed to have had ineffective assistance of counsel. *Id.* In this case, Barnett's counsel requested transfer to the special judge so all of Barnett's pending cases would be before one judge. *Record* at 9. Regardless of whether the appointment of

Special Judge Yelton violated T.R. 79(4), counsel's request for the transfer was a strategic decision. As such, we will not find Barnett had ineffective assistance of counsel.

The trial court is accordingly affirmed in part and reversed in part. We remand this cause for proceedings consistent with setting aside the merger of Counts II, III and IV.

RATLIFF, C.J., and HOFFMAN, J., concur.