## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2015, 9:07 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

James C. Spencer
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce Ashby,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 7, 2015

Court of Appeals Case No.
39A04-1504-CR-156

Appeal from the Jefferson Superior Court

The Honorable Michael J. Hensley, Judge

Trial Court Cause No.
39D01-1306-FD-542

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Bruce Ashby was convicted of possession of a controlled substance as a Class D felony. Ashby appeals, raising four issues for our review, one of which we find dispositive: whether the State presented sufficient evidence to support his conviction. Concluding the evidence was insufficient, we reverse and remand.

# Facts and Procedural History

[2] On May 24, 2013, officers of the Madison Police Department went to Ashby's residence to execute an arrest warrant for Perry Gammons. The officers had received information that Gammons was staying with Ashby. Ashby told the officers he did not know Gammons and invited the officers inside "to take a look for [them]selves." Transcript at 26. While inside Ashby's residence, the officers observed a cellophane wrapper that contained a white powdery residue. The wrapper was in plain view on a coffee table in the living room. The officers asked Ashby if the wrapper contained methamphetamine. Ashby said it was "crushed Lortab," not methamphetamine, and admitted he did not have a prescription for Lortab. *Id.* at 27.

[3] The officers seized the wrapper but did not arrest Ashby at that time. Several weeks later, Ashby was arrested and charged with possession of a controlled substance as a Class D felony. The charging information alleged,

On or about May 24, 2013, Bruce Ashby, knowingly or intentionally, without a valid prescription or order of a practitioner acting in his/her professional practice, possessed a controlled substance classified under schedule II under IC 35-48, that is: Lortab.

Appendix of Appellant at 11. Lortab, a brand name prescription drug containing hydrocodone and acetaminophen, is not listed, by that name, in any schedule in the Indiana Code. *See* Tr. at 57; Drug Enforcement Administration, Hydrocodone (Oct. 2014), http://www.deadiversion.usdoj.gov/drug_chem_info/hydrocodone.pdf.

[4] At the time of Ashby's arrest, the identity of the white powdery residue had not been confirmed by forensic testing. The Madison Police Department sent the wrapper to the Indiana State Police Laboratory for testing in August 2013. Forensic scientist Brandy Cline conducted the analysis. According to her Certificate of Analysis dated October 9, 2013, the wrapper contained "Dihydrocodeinone (Hydrocodone), a controlled substance," as well as "Acetaminophen, a non-controlled substance." State's Exhibit 4. Cline was unable to determine the weight of the residue because the laboratory's scale cannot detect a measurement that is less 0.01 grams.

[5] A jury trial was held in February 2015. On the first day of trial, between jury selection and opening statements, the State moved to amend the charging information. After speaking with Cline that morning, the State realized Cline could not testify the white powdery residue was Lortab "because it was in a

crushed form, so . . . there's no markings." Tr. at 13. In addition, the State explained,

> Hydrocodone is a Schedule II controlled substance, however, . . . I just learned from the chemist that because it has some acetaminophen in it, that probably puts it in Schedule III. . . . [I]t was charged as a Schedule II, and again, it is a Schedule II if it's just hydrocodone, but because of the acetaminophen, it changes the character.

*Id*. at 4-5.

[6] Prior to ruling on the State's motion, the trial court heard testimony from Cline outside the presence of the jury:

> Q. [B]ased upon your analysis . . . your conclusion would be that it is a Schedule III substance as opposed to a Schedule II substance[?] . . .
>
> A. My understanding of the criminal code is that hydrocodone is listed as a Schedule II substance, but dihydrocodone [sic] or hydrocodone which it's also known, mixed with a amount [sic] of a non-narcotic, which would include acetaminophen, is a Schedule III.
>
> * * *
>
> Q. So what amount does it require to become . . . I mean in terms of proportion, is it required to become a Schedule III?
>
> A. I don't know the amount off the top of my head. I just know when we deal with whole tablets that contain the mixture, they are a Schedule III in the State of Indiana. . . .

Q.  So in your opinion, based upon what evidence you have, it's a Schedule III, or is it?

A.  I guess I do not know whether it is a Schedule II or a Schedule III . . . .  [L]ike I said the Schedule III is a certain amount of acetaminophen mixed with hydrocodone, I believe.  I do not know that amount so I could not say for sure.

*Id.* at 7, 10.

At the conclusion of Cline's testimony, the State requested the charging information be amended to allege Ashby possessed a controlled substance "classified as a Schedule II or III." *Id.* at 13.  The trial court granted the State's motion to amend the charging information, and the trial commenced.  The jury found Ashby guilty of "Possession of a Controlled Substance Classified Under Schedule II or III Under I.C. 35-48, a Class D Felony."  App. of Appellant at 116 (Verdict Form).[1]  This appeal followed.

# Discussion and Decision

## I.  Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the

---

[1] The jury instructions stated the term "controlled substance" refers to a substance identified in Schedule I, II, III, IV, or V, and that hydrocodone is classified as a Schedule II controlled substance.  App. of Appellant at 114-15.  The jury instructions did not reference which Schedule III controlled substance Ashby was alleged to have possessed.

verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor assess the credibility of witnesses. *Id.* Unless no reasonable fact-finder could conclude the elements of the crime were proven beyond a reasonable doubt, we will affirm the conviction. *Id.*

## II. Possession of a Controlled Substance

[9] A conviction must be reversed if the State failed to prove an essential element of the offense. *Porod v. State*, 878 N.E.2d 415, 417 (Ind. Ct. App. 2007). With respect to offenses involving controlled substances, the State must prove, as an essential element, the substance falls within a particular statutory provision. *Barnett v. State*, 579 N.E.2d 84, 86 (Ind. Ct. App. 1991) (citing *White v. State*, 161 Ind. App. 568, 571, 316 N.E.2d 699, 701 (1974)), *trans. denied.* If, during trial, the substance is identified by a name specifically designated a controlled substance in the Indiana Code, the State has proven, as a matter of law, the substance is a controlled substance. *Id.* If the substance is identified by a name that is *not* specifically designated a controlled substance, such as Lortab, the State must offer extrinsic evidence concerning the substance's chemical properties to prove the substance falls within the Indiana Code's definition of a controlled substance. *Id*.

[10] Here, Ashby was convicted of possession of a "Schedule II or III" controlled substance. Indiana Code section 35-48-4-7(a) (2011) provides,

> A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses a controlled

substance (pure or adulterated) classified in schedule I, II, III, or IV, except marijuana, hashish, salvia, or a synthetic cannabinoid, commits possession of a controlled substance, a Class D felony.

[11] In Indiana, hydrocodone is a Schedule II controlled substance:

(b) Any of the following substances, except those narcotic drugs listed in other schedules [are included in Schedule II]:
(1) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate . . . including:
* * *
(K) hydrocodone . . . .

Ind. Code § 35-48-2-6(b)(1)(K) (2008). But when combined with a certain quantity of a nonnarcotic, hydrocodone (also known as dihydrocodeinone) is a Schedule III controlled substance. Indiana Code section 35-48-2-8 (2008) provides,

(e) Narcotic Drugs. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing any of the following narcotic drugs . . . in the following limited quantities [are included in Schedule III]:
* * *
(4) Not more than 300 milligrams of dihydrocodeinone, per 100 milliliters or not more than 15 milligrams per dosage unit, with one (1) or more active nonnarcotic ingredients in recognized therapeutic amounts . . . .
* * *
(g) The board[2] shall except by rule any compound, mixture, or preparation containing any stimulant or depressant substance

---

[2] The "board" refers to the Indiana Board of Pharmacy. Ind. Code § 35-48-1-6.

listed in subsections (b) through (e) from the application of any part of this article if the compound, mixture, or preparation contains one (1) or more active medicinal ingredients not having a stimulant or depressant effect on the central nervous system, and if the admixtures are included therein in combinations, quantity, proportion, or concentration that vitiate the potential for abuse of the substances which have a stimulant or depressant effect on the central nervous system.

[12]  During trial, Cline testified the wrapper "was found to contain dihydrocodonone [sic] or hydrocodone, a controlled substance" and that "[e]xamination also indicated the presence of acetaminophen a non-controlled substance." Tr. at 55. Cline also stated she was unable to determine the weight of the residue because the laboratory's scale cannot detect a measurement that is less than 0.01 grams. The only testimony regarding the amount of the hydrocodone versus acetaminophen was Cline agreeing there was relatively more acetaminophen in the sample.[3] The State presented no evidence on whether the acetaminophen in the sample was in a "recognized therapeutic amount[]." Ind. Code § 35-48-2-8(e)(4) (2008).

[13]  Ashby argues the evidence was insufficient to support his conviction because the State failed to prove an essential element of the offense. He contends the

---

[3] The instrument Cline uses to analyze samples provides the "relative abundance" of each substance. Tr. at 59. Prior to trial, during the hearing on the State's motion to amend the charging information, Cline stated she could not determine the exact quantities of hydrocodone and acetaminophen in the residue. Cline explained, "[A]t our lab we cannot quantitate to tell you exactly how much acetaminophen versus how much hydrocodone there is." *Id.* at 11. Cline "would not feel comfortable saying the exact ratio" of hydrocodone to acetaminophen, but she agreed "there is more acetaminophen than there is hydrocodone." *Id.*

State was required to prove the residue was a Schedule II or Schedule III controlled substance. We addressed a similar set of facts in *Barnett*, 579 N.E.2d 84, a case in which the defendant was convicted of possession of a Schedule III controlled substance with intent to deliver. Police executed a search warrant at Barnett's house and seized nine white tablets that later tested positive for codeine and acetaminophen. Codeine is a Schedule II controlled substance. Ind. Code § 35-48-2-6(b)(1)(G). But similar to hydrocodone, when combined with a certain quantity of a nonnarcotic, codeine is a Schedule III controlled substance. Ind. Code § 35-48-2-8(e)(2) (providing a mixture of "not more than 90 milligrams [of codeine] per dosage unit, with one (1) or more active, nonnarcotic ingredients in recognized therapeutic amounts" is a Schedule III controlled substance). At trial, a chemist from the Indiana State Police Laboratory testified the tablets contained "Codeine, which is a controlled substance, and also present was a drug called Acetaminophen, which is not a controlled substance." *Barnett*, 579 N.E.2d at 87.

[14] We reversed Barnett's conviction for possession of a Schedule III controlled substance with intent to deliver because no testimony was given regarding the quantity of codeine present in each tablet or whether the codeine was mixed with a nonnarcotic in a "recognized therapeutic amount[]" as required by Indiana Code section 35-48-2-8(e)(2). *Id.* We held the State's failure to prove the tablets contained a mixture of codeine and acetaminophen classified by the Indiana Code as a Schedule III controlled substance "constitutes failure to prove an essential element of the offense." *Id.* In doing so, we noted the State

could not meet its evidentiary burden by relying on the chemist's opinion as to whether the tablets were a Schedule III controlled substance; additional extrinsic evidence regarding the quantity of codeine by weight and the chemical properties of the mixture was required.[4]  In addition, we disagreed with the chemist's "blanket classification" of codeine with acetaminophen as a Schedule III controlled substance, *id.*, citing the provision of the statute permitting an exception for any mixture containing a narcotic drug and one or more nonnarcotic medicinal ingredients, provided the nonnarcotic is included in a quantity or proportion that "vitiate[s] the potential for abuse" of the narcotic drug.  *See* Ind. Code § 35-48-2-8(f) (1987); *accord* Ind. Code § 35-48-2-8(g) (2008).

[15]  In the present case, the chemist's testimony was similarly lacking.  Cline stated the residue contained hydrocodone and acetaminophen, with relatively more acetaminophen, but she was unable to offer further detail regarding the composition of the mixture.[5]  As in *Barnett*, we conclude the State failed to prove an essential element of the offense.  The evidence was insufficient to

---

[4] A chemist's role in a case such as this is not to offer testimony on which schedule, if any, a particular substance belongs.  That is a legal conclusion.  *See* Ind. Evidence Rule 704(b); *Kelly v. Levandoski*, 825 N.E.2d 850, 864 (Ind. Ct. App. 2005), *trans. denied*.  The chemist's role, as an expert witness, is to identify the substance by its name or chemical properties.  The burden is on the State to ensure the testimony proves the substance falls within a particular statutory provision.  *See Barnett*, 579 N.E.2d at 86.

[5] We acknowledge this issue arises in large part because the tablets in this case had been crushed.  When prescription drugs are found in an unaltered state, with distinguishing markings, their identities can typically be proven by circumstantial evidence rather than chemical analysis.  *See Boggs v. State*, 928 N.E.2d 855, 865-66 (Ind. Ct. App. 2010) (stating the detective identified pills as a decongestant containing pseudoephedrine based on "the marking 'L054,' which appears on the Equate brand of decongestant"), *trans. denied*.

support Ashby's conviction for possession of controlled substance as a Class D felony.

# Conclusion

The evidence in this case fell short of what our legislature has required to sustain a conviction for possession of a controlled substance. We therefore reverse and remand with instructions that Ashby's conviction be vacated.

Reversed and remanded.

Vaidik, C.J., and Pyle, J., concur.