Robert R. TURNER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 34A05–0009–CR–380.

Court of Appeals of Indiana.

May 3, 2001.

Brent R. Dechert, Dechert Law Office, Kokomo, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellant, Robert R. Turner, challenges the sufficiency of the evidence supporting his conviction for Illegal Consumption of an Alcoholic Beverage by a Minor,[1] a Class C misdemeanor. The sole question presented upon appeal is whether the State provided sufficient proof that the "beer" Turner consumed contained at least .5% alcohol by volume.

We affirm.

1. Ind.Code § 7.1–5–7–7(a)(2) (Burns Code Ed. Repl.1996).

On March 26, 2000, Officer Kevin Summers of the Kokomo Police Department responded to a complaint of loud music at a residence. There, Officer Summers spoke with nineteen-year-old Turner who lived in the residence. Turner's breath smelled of alcoholic beverages, his eyes were bloodshot and watery and his speech was "extremely slurred." Record at 34. In the course of conversation, Turner admitted that he had consumed "four beers while visiting with friend[s]...." Record at 35. As a result, Officer Summers administered a portable breath test which indicated a positive result for alcohol use.

Thereafter, Turner was charged with knowingly consuming an alcoholic beverage as a minor, a Class C misdemeanor. During a bench trial on May 11, 2000, Officer Summers was the State's sole witness and related the events described above. The State did not, however, submit a chemical analysis of the beer or present evidence of the type of beer which Turner drank. As a result, the defense moved for judgment on the evidence, claiming that the State had failed to establish that Turner had consumed an alcoholic beverage, statutorily defined as a liquid containing at least .5% of alcohol by volume. Specifically defense counsel argued that "[t]here has been no testimony presented to what type of beer [Turner] consumed and that it contained point five percent or more of alcohol." Record at 37. The State responded that Turner's admission that he drank four beers and the officer's personal observations of Turner's impaired state were sufficient to sustain the conviction. The trial court denied the defense's motion and found Turner guilty as charged.

Upon appeal, Turner challenges the sufficiency of the evidence supporting his conviction. The statute at issue provides in pertinent part as follows:

(a) It is a Class C misdemeanor for a minor to knowingly:

(1) Possess an alcoholic beverage;

(2) Consume it; or

(3) Transport it on a public highway when not accompanied by at least one (1) of his parents or guardians.

I.C. § 7.1–5–7–7(a). For purposes of Title 7.1, a minor "means a person less than twenty-one (21) years of age" and an alcoholic beverage is a "liquid or solid that . . . [i]s, or contains, one-half percent (0.5%) or more alcohol by volume...." Ind.Code § 7.1–1–3–25 (Burns Code Ed. Repl.1996) (defining minor); Ind.Code § 7.1–1–3–5 (Burns Code Ed. Repl.1996) (defining alcoholic beverage). Thus, to support the offense as charged, the State was required to prove that Turner, while under the age of twenty-one, knowingly consumed a beverage containing at least .5% alcohol by volume.

 It is well settled that in reviewing challenges to the sufficiency of the evidence, this court will neither reweigh the evidence nor judge the credibility of witnesses and will consider only the evidence and inferences most favorable to the judgment. *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind.2001). Though Turner acknowledges this standard, he contends that the evidence most favorable to the judgment— his impaired state, his admission and the positive breath test result—does not establish that the beer he consumed contained at least .5% of alcohol by volume. According to Turner, the State was required to perform a chemical analysis of the beer to show its alcohol content, or at the least, should have shown the type of beer he consumed. The State contends that it is not limited to such methods and further contends that the evidence presented in this case was sufficient to support the conviction.

Neither party has presented and our research has not revealed any cases discussing the State's burden of proof concerning the charged offense. However, our research did reveal a line of cases addressing the State's burden of proof with regard to a prior statutory prohibition against selling or possessing intoxicating liquors. In each of those cases, our Supreme Court was asked to determine whether the State had provided sufficient proof that the beverage sold or possessed was in fact an intoxicating liquor.

In *Hiatt v. State*, 189 Ind. 524, 127 N.E. 277 (1920), the defendant claimed that the State had failed to show that the diluted whisky he allegedly sold was an intoxicating liquor. At the time, an intoxicating liquor was statutorily defined as:

> all malt, vinous, or spirituous liquor, containing so much as one-half of one per cent. of alcohol by volume, or any other intoxicating drink, mixture or preparation of like nature; and all mixtures or preparations containing such intoxicating liquor, whether patented or not, reasonably likely or intended to be used as a beverage, and all other beverages containing so much as one-half (½) of one per cent. of alcohol by volume.

189 Ind. at 527, 127 N.E. at 278. The defendant specifically asserted that the State should have performed a chemical analysis of the diluted whisky, to establish the "portion of alcohol required to make liquid intoxicating and within the statutory prohibition." 189 Ind. at 531, 127 N.E. at 279. The defendant further asserted, "the presumption of innocence ... should not be left to uncertainties, but should be over-

come only by a chemical analysis of the liquid in question." 189 Ind. at 531–32, 127 N.E. at 279.

Our Supreme Court concluded that a chemical analysis was not required even though it was a "proper and sufficient method of proving the intoxicating character of a particular beverage...." 189 Ind. at 532, 127 N.E. at 280. The court further concluded that there were "other methods by which this proof might be as satisfactorily made" such as proving that the liquid sold was pure whisky[2] or establishing "that the liquid sold was intoxicating." *Id.*

Six years later in *Guetling v. State*, 198 Ind. 284, 152 N.E. 166 (1926), our Supreme Court was again presented with a challenge to the sufficiency of the evidence supporting a conviction for possessing intoxicating liquor. The evidence at trial revealed that home brew beer was discovered in the defendant's home and that the defendant admitted that the beer belonged to him. Additionally, a sergeant on the police force testified that the beer was intoxicating liquor and further testified that in his experience as an officer, home brew beer normally contains more than .5% alcohol by volume. Relying upon the *Hiatt* decision, the *Guetling* court concluded that "a chemical analysis of a liquid was not required to determine if [the home brew beer] was intoxicating, though such method was a proper one...." 198 Ind. at 286, 152 N.E. 166. The court also stated that "[p]roof that the liquid in question was intoxicating liquor or that it contained as much as one-half of one per cent. of alcohol by volume was sufficient to sustain the charge." *Id.*

2. With regard to the first method of proof, the court noted that the "courts of this state will take judicial notice that whisky is intoxicating liquor." 189 Ind. at 527, 127 N.E. at 278. However, the court cautioned that trial courts would not take judicial notice "from the fact alone that whisky in some amount is in a certain compound, that such compound or liquid is necessarily intoxicating, or that it contains more than one-half of 1 per cent. of alcohol by volume." *Id.*

Finally, in *Crider v. State*, 207 Ind. 325, 327, 192 N.E. 437, 438 (1934) the defendant contended that "the evidence [did] not show a sale of intoxicating liquor containing one-half of 1 per cent. alcohol by volume." The court, looking to the evidence most favorable to the verdict which consisted of a witness's testimony that the liquid smelled and looked like intoxicating liquor, found that the testimony was sufficient to prove that the liquid was intoxicating liquor. Citing *Hiatt*, the court reiterated that "[p]roof that the liquid in question was intoxicating liquor or that it contained as much as one-half of 1 per cent. of alcohol by volume was sufficient to sustain the charge." *Id.*

While at first glance it might appear that these cases are controlling, a closer look at *Hiatt* and the cases interpreting it demonstrates an uncertainty in the court's holding. The statutory definition of "intoxicating liquor" was set forth only in the *Hiatt* opinion and it appears that the *Hiatt* court read that term to mean a beverage containing at least .5% alcohol by volume. To be sure, the *Hiatt* court declared that "in order to make a sale of liquor an offense in this state, it must contain more than one-half of 1 per cent. of alcohol by volume." *Hiatt*, 189 Ind. at 527, 127 N.E. at 278. The court also noted, in addressing the defendant's challenge to the sufficiency of the evidence, that the jury must have concluded that the "liquor contained alcohol in excess of the amount allowed by statute." 189 Ind. at 532, 127 N.E. at 280.

Yet, the *Hiatt* court also acknowledged that one of the definitions of "intoxicating liquor" was "any other intoxicating drink, mixture or preparation of like nature...." *See Hiatt*, 189 Ind. at 527, 127 N.E. at 278. With this definition in mind, one might legitimately argue that when the *Hiatt* court stated that "proof that the liquid sold was intoxicating" would support a finding that a beverage was an intoxicating liquor, it meant that such proof would sufficiently establish that the beverage was an "intoxicating drink, mixture or preparation of like nature" and not that it contained the prohibited amount of alcohol. Stated another way, the court might not have intended that the percent of alcohol by volume could be established by proof that a beverage was intoxicating. As the state of the law under *Hiatt* is not clear, we decline to apply its holding to this case.

Nevertheless, there are recent decisions from our Supreme Court and this court which would seem to support a conclusion that a chemical analysis of an alleged alcoholic beverage is not required. *See Vasquez*, 741 N.E.2d 1214; *Clifton v. State*, 499 N.E.2d 256 (Ind.1986); *Smalley v. State*, 732 N.E.2d 1231 (Ind.Ct.App.2000). These cases hold that the identity of a drug may be established by circumstantial evidence, thereby rejecting the notion that a chemical analysis, which is direct proof of a drug's identity, must be offered into evidence. *See Clifton*, 499 N.E.2d at 257–58 (noting that while a chemical analysis of an illegal substance would constitute direct proof of the identity of a drug, circumstantial evidence is sufficient); *Vasquez*, 741 N.E.2d at 1216–17 (acknowledging that while a chemical analysis might be the best way to establish the identity of a drug, it is not the only way).

Although none of the cases mentioned above addressed whether an "alcoholic beverage" could be established by circumstantial evidence, we can discern no reason why it should not be. Indeed, as in the cases involving illegal drugs, circumstantial evidence may be the only proof of the identity of an alcoholic beverage which is consumed or discarded. *See Clifton*, 499 N.E.2d at 257–58 (noting that a chemical analysis could not have been performed as the heroin had been swallowed). Thus,

while a chemical analysis of an alleged alcoholic beverage is no doubt the best way to establish its identity, circumstantial evidence tending to show that a beverage contains more than .5% alcohol by volume may be sufficient.

 We now turn to the facts of this case to determine whether there was sufficient circumstantial evidence establishing that the beverage Turner drank was an alcoholic beverage. First, there is overwhelming evidence that Turner was in a state of intoxication. Officer Summers testified that Turner emitted a strong odor of alcoholic beverages,[3] his eyes were bloodshot and watery and his speech was extremely slurred. In fact, Officer Summers testified that Turner's speech was so slurred that Turner "mumbled through" the conversation and "[i]t was hard to understand what he was actually saying." Record at 36. In addition, the portable breath test Turner was given revealed a positive result.[4] Finally, Turner admitted that he had consumed four beers. While

that admission does not necessarily exclude the possibility that the beer was nonalcoholic,[5] because Turner did not attempt to describe the "beer" as nonalcoholic or near beer, the trier of fact was permitted to infer that the defendant was referring to beer as it is commonly known. *See* 45 AM.JUR.2D *Intoxicating Liquors* § 9 (1999) ("When used in its ordinary meaning and without qualification, the term 'beer' implies a malt liquor and an intoxicating or alcoholic beverage.") (footnotes omitted). Finally, the trier of fact was permitted to consider the obvious effects of the four beers Turner admitted he consumed. *See Slettvet v. State*, 258 Ind. 312, 315, 280 N.E.2d 806, 808 (1972) (noting that the effects of alcohol are within the knowledge of laypersons).

While any of these factors alone might not have supported the verdict, when considered together they provide sufficient evidence that the beer Turner consumed contained at least .5% alcohol by volume.

---

3. We note that testimony that a beverage smells and looks like beer, although a factor to be considered, would not sufficiently identify a liquid as an alcoholic beverage as the only distinguishing characteristic of a nonalcoholic malt beverage is its alcohol content. *See* I.C. § 7.1–1–3–26.5 (Burns Code Ed. Repl.1996) (defining a nonalcoholic beverage as a liquid produced "[i]n a manner similar to beer; and ... [f]rom ingredients similar to beer...."). *See also* 45 AM.JUR.2D *Intoxicating Liquors* § 10 (1999) ("The term 'near beer' is one coined to designate a nonintoxicating malt liquor resembling beer in color, odor, and taste, and intended as a substitute therefore.").

4. While the breath test indicated a positive result, there is no evidence of the amount of alcohol in Turner's blood. A nonalcoholic beverage may contain a small amount of alcohol but less than .5%. *See* I.C. § 7.1–1–3–26.5 (defining a nonalcoholic malt beverage as a liquid containing less than .5% alcohol by volume). Thus, it is possible that consumption of several "nonalcoholic" beverages in a

short period of time would produce a positive breath test result. Therefore, a positive breath test result, without proof of the amount of alcohol in a person's blood, does not necessarily prove that the person consumed a beverage with at least .5% alcohol by volume.

5. We cannot agree with the State's contention that by admitting that he consumed "beer," which by definition is *"an alcoholic beverage obtained by the fermentation of an infusion or decoction of barley malt or other cereal and hops in water,"* Turner in effect admitted that he consumed an alcoholic beverage. *See* I.C. § 7.1–1–3–6 (Burns Code Ed. Repl.1996) (emphasis added). A person may unwittingly speak of "beer" without being aware of or intending the meaning set forth in Title 7.1. In fact, the definition of "beer" included in WEBSTER'S NEW INTERNATIONAL DICTIONARY 244 (2d ed. 1943) includes both alcoholic and nonalcoholic beverages. Therefore, Turner's conviction cannot be upheld upon this admission alone.

However, under a different set of facts where a chemical analysis is not performed when the beverage is available for testing, the State risks forfeiting a prosecution upon appeal. Nevertheless, because the evidence in this case is sufficient, we affirm the conviction.

The judgment is affirmed.

SHARPNACK, C.J., and MATHIAS, J., concur.