**The STATE of Ohio**

v.

**AIKEN.**█

2002-Ohio-6436.]

Hamilton County Municipal Court, Ohio.

No. C02 CRB 12944.

Decided Oct. 10, 2002.

8

[redacted]

Russell J. Mock II, for plaintiff.
Saul Fettner, for defendant.

ELIZABETH MATTINGLY, Judge.

{¶ 1}   Defendant Joseph M. Aiken is charged with violating R.C. 4301.69(A), which states:

{¶ 2}   "[N]o person shall * * * buy beer or intoxicating liquor for, or furnish it to, an underage person   * * *."

{¶ 3}   The essential facts are not in dispute.   On the evening of April 13, 2002, two females, Jessica Marlowe, age seventeen, and Kim Corbin, age nineteen,[1] were at the apartment of Corbin's boyfriend, Steven Bryant, in Colerain Township, Ohio. Defendant Aiken came to the apartment and Bryant asked defendant to purchase alcohol for the two females.   Marlowe gave defendant Aiken $20 and, with Corbin,[2] followed him to Tom's Drive–Thru liquor store.   As the females waited outside in their car, defendant went into the store and emerged with a sealed bottle of Bacardi 151 rum in a brown paper sack.   He then handed the bottle to Jessica Marlowe and left.

{¶ 4}   Defendant later returned to the apartment, where the women were drinking "shots" from the bottle defendant had purchased for them.   Both females described the contents of the bottle as alcohol.   Marlowe had more than three shots within the 1½ hours following the purchase;   Kim Corbin was drinking shots as well and described herself as drunk from drinking the rum.   The females followed each shot with a drink of Coke or Sprite.

---

1.   Both females are underage for purposes of the Ohio Liquor Control Act, which adopts the national uniform drinking age of 21.   R.C. 4301.691.

2.   It is unclear whether Steven Bryant also followed defendant to the liquor store.

{¶ 5}   Corbin then drove Jessica Marlowe to her home some 10 minutes away. By the time they got there, Jessica Marlowe was unconscious and/or comatose. Police and emergency medical personnel were called to the scene but could not rouse Marlowe.   As emergency medical personnel carried her on a stretcher for transport to the hospital, Officer Kevin Sever smelled a strong odor of alcoholic beverage on Marlowe's person.   Marlowe's next memory was of waking up at the hospital, and she described the result of having drunk the rum purchased by defendant Aiken as "almost killing me."

{¶ 6}   Police did not retrieve the described bottle of Bacardi 151 rum because one of the women involved in drinking it earlier in the evening was in the hospital and the other was slumped over the toilet in Bryant's apartment unable to give information when they encountered her.

{¶ 7}   Based on these facts, defendant urges that the state has not met its burden of demonstrating that the Bacardi 151 rum purchased by defendant Aiken is, in fact, an "intoxicating liquor" as described in R.C. 4301.01.   He bases this argument on the fact that no evidence of the specific alcoholic content of the alleged rum was introduced into evidence at trial.   In response, the state urges that the circumstantial evidence presented herein demonstrates that the substance defendant purchased for the underage females was an "intoxicating liquor."

{¶ 8}   The term "intoxicating liquor" is defined in R.C. 4301.01(A)(1) to include:

{¶ 9}   "[A]ll liquids and compounds * * * containing one-half of one per cent or more of alcohol by volume which are fit to use for beverage purposes, from whatever source and by whatever process produced, by whatever name called and whether or not the same are medicated, proprietary, or patented.   Such phrase includes * * * alcohol and all solids and confections which contain any alcohol."

{¶ 10}   R.C. 4301.01 further defines "alcohol" as "[e]thyl alcohol, whether rectified or diluted with water or not, whatever its origin may be, and includes synthetic ethyl alcohol."   Such term excludes denatured alcohol and wood alcohol.

{¶ 11}   While there is scant case law interpreting the term "intoxicating liquor," there is authority that such a finding can be based on circumstantial evidence if the liquid concerned is named in the statute's listing of beverages deemed to be intoxicating beverages.   Thus, what defendant admitted was "home brew" beer need not be proven to have a certain alcoholic percentage to be found intoxicating liquor since "beer" was named specifically in the applicable statute. *Carr v. State* (1931), 11 Ohio Law Abs 577, 1931 WL 2810 (4th Dist.).[3]   Likewise,

---

3.   This case was decided under Section 6212–14 of the General Code.

in *Nesca v. Dayton* (1933), 13 Ohio Law Abs. 658, 1933 WL 1356 (2d Dist.), when beer was specifically described as an intoxicating beverage in the statute, "near beer" could be proven to be an intoxicating liquor by inference and testimony.[4] Other states dealing with this issue have taken a similar position. See, for example, *State v. Goralski*, 2001 WI App. 146, 246 Wis.2d 671, 630 N.W.2d 276.

{¶ 12}  More recently, in *Glen's Grill No. 3, Inc. v. Ohio Bd. of Liquor Control* (1959), 110 Ohio App. 509, 82 Ohio Law Abs. 546, 13 O.O.2d 280, 166 N.E.2d 399, a case involving whether the state had proven that whiskey was an intoxicating liquor, the appellate court opined:

{¶ 13}  "It was not necessary to prove the alcoholic content of the beverage sold by direct evidence, but it is sufficient if the same is shown by indirect or circumstantial evidence.  It was testified here that the drink was poured from a whiskey bottle.  This in itself is strong circumstantial evidence that the drink was an intoxicating beverage.  In addition thereto, the drink was referred to as a 'shot.'  Such term connotes alcoholic content in concentrated form.  The further circumstance that it was served with a coke is again strong evidence that the alcoholic content of the drink was concentrated to such an extent that it required some sort of chaser."  Id. at 512, 82 Ohio Law Abs. 546, 13 O.O.2d 280, 166 N.E.2d 399.

■ {¶ 14}  Applying these decisions to the case at bar, since alcohol is specifically listed in the statute, circumstantial evidence is permissible to prove that it is an intoxicating liquor.  Thus, proof of the liquid's specific alcoholic content is not required.

■ {¶ 15}  The circumstantial evidence that the bottle of Bacardi 151 rum purchased in this case was an "intoxicating liquor" is strong.  The court notes first the definition of "rum" in Webster's Third New International Dictionary (Unabr.1966): "1. an alcoholic liquor prepared by fermenting molasses, macerated sugarcane, or other saccharine cane product, distilling, coloring with caramel and aging. 2. alcoholic liquor."

■ {¶ 16}  Other facts relevant here are the beverage's extremely intoxicating effect on the females who drank it, the strong odor of alcohol observed on Marlowe by Officer Sever, the description of all witnesses that this liquid was alcohol, and the additional fact that was deemed probative in *Glen's Grill No. 3*, supra, that it was drunk in shots with a chaser.  In addition, the defendant himself described the liquid as alcohol.  Thus, Corbin testified credibly and

---

4.  Contra *State v. Brophy* (June 8, 1983), 12th Dist., 1983 WL 4388 (court cannot take judicial notice that mixed drink of Jim Beam and Coke is an intoxicating liquor even when shown to contain whiskey that had a proof content of 78.2 percent).

without contradiction that the defendant called her after the charges had been filed to ask her to testify that he had bought the alcohol for her and not Marlowe because Marlowe was a minor.[5] Such statement is an admission of fact by the defendant. These factors, taken together prove beyond a reasonable doubt that the beverage purchased by defendant herein was an "intoxicating liquor" as defined by R.C. 4301.01(A)(1).

{¶ 17} Even though the court has found that the circumstantial evidence in this case proves that the rum defendant purchased was an intoxicating liquor, the court could, in the alternative, also properly take judicial notice of this fact.

{¶ 18} Evid.R. 201 governs judicial notice of adjudicative facts, i.e., the facts of the case. Evid.R. 201(B) states that only facts which are not open to reasonable dispute may be the subject of judicial notice. This may occur when the fact is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

{¶ 19} In at least one Ohio case, the Third District Court of Appeals sustained a trial court judge who took judicial notice that a beverage not specifically mentioned in the statute, to wit, whiskey, was an "intoxicating liquor" without specific proof of the alcoholic content of the liquid. *Hare v. State* (1936), 21 Ohio Law Abs. 453, 1936 WL 2041.[6] *Hare* involved the sale of alleged intoxicating liquor to one Charles Archer, who testified that he drank the whiskey he purchased and became intoxicated. No evidence except the testimony of the purchaser was introduced at trial tending to prove the percent of alcoholic content of the alleged whiskey. The appellate court nevertheless sustained the trial court's finding, stating:

{¶ 20} "That the word 'whiskey' means an intoxicating liquor is so notorious as to require judicial notice of the fact; that is to say proof of such fact is unnecessary." Id. at 455.

{¶ 21} The court further held:

{¶ 22} "It is also common knowledge requiring judicial notice that whiskey always contains much more alcohol than 3.2 percentum by weight * * * and that it is fit for use for beverage purposes and when used the use is generally as a beverage."[7] Id.

---

5. Defendant may have believed that Corbin was an adult for purposes of the Liquor Control Act because she was over 18 at the time of the incident in question.

6. This case was decided under Section 6212–14 of the General Code.

7. While the statute under which *Hare* was decided required proof that a substance was more than 3.2 percent alcohol to be an intoxicating liquor, the present statute requires proof only

{¶ 23} Applying the requirements of Evid.R. 201 to this case, the court finds that judicial notice can properly be taken of the fact that rum is an intoxicating liquor. Indeed, there seems to be no justification for distinguishing the rum in this case from the whiskey judicially noticed by the court in *Hare*, supra.

{¶ 24} For the above-stated reasons, the court finds defendant Aiken guilty of purchasing an intoxicating liquor for an underage person in violation of R.C. 4301.69(A).

{¶ 25} SO ORDERED this 10th day of October, 2002.

Judgment accordingly.

that it is more than ½ of 1 percent alcohol by volume. See, also, *Wereb v. State* (1926), 22 Ohio App. 512, 4 Ohio Law Abs. 518, 154 N.E. 172; *Mazzeo v. Ohio Bd. of Liquor Control* (1955), 73 Ohio Law Abs. 94, 136 N.E.2d 663. Other states have taken a similar position. See, for example, *Turner v. State* (Ind.App.2001), 749 N.E.2d 1205; *Skaggs v. State* (Okla.Crim. 1954), 276 P.2d 267, 49 A.L.R.2d 760, and Annotation, Judicial Notice of Intoxicating Quality, and the Like, of a Liquor or Particular Liquid, From Its Name (1956), 49 A.L.R.2d 764.