## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 05 2020, 9:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Phillips
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

E.S.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

August 5, 2020

Court of Appeals Case No.
19A-JS-2901

Appeal from the
Warrick Circuit Court

The Honorable
Greg Granger, Judge

Trial Court Cause No.
87C01-1905-JS-134

**Vaidik, Judge.**

# Case Summary

[1] E.S. appeals his delinquency adjudication for consuming an alcoholic beverage, arguing that the evidence is insufficient. We affirm.

# Facts and Procedural History

[2] The evidence most favorable to the adjudication is as follows. In March 2019, a Castle Middle School student named K.O. poured vodka from her home's refrigerator into a water bottle and brought it to school. K.O. was familiar with vodka, and this was not the first time that she had brought vodka to school. She later stated that the liquid tasted like and smelled like vodka. When she arrived at school, K.O. placed the water bottle in her locker. Before lunch, a student named B.N. took the water bottle containing vodka and mixed it into a bottle of blue Powerade. B.N noted that the Powerade bottle was nearly empty, and he filled it to the halfway point with the vodka given to him by K.O. B.N later testified that he knew the water bottle contained alcohol. B.N. said that he knew it was vodka and that it tasted like vodka. B.N. also told E.S. that the Powerade bottle contained vodka. On the way to the cafeteria, E.S. drank from the Powerade bottle. Mr. Hood, an assistant principal, saw E.S. drinking from the Powerade bottle and told him not to drink in the hallway. E.S. then went into the cafeteria, and the Powerade bottle was shared with multiple students at the lunch table.

[3] Two students told Mr. Fischer, another of the school's assistant principals, about the alcohol being consumed in the cafeteria. He worked with two custodians to fish the Powerade bottle out of the trash and took the bottle with him to his office. Fischer later said that the bottle smelled like it contained alcohol. Fischer then radioed Mr. Hood and told him about the situation. Both principals began questioning students that they believed drank from the bottle during lunch. Mr. Hood questioned E.S. E.S. told Mr. Hood that he did not drink alcohol but that he had drank from the Powerade bottle. Deputy Michael Dietsch was then called to the school. Dietsch sniffed the Powerade bottle and thought that it smelled like it had contained alcohol.

[4] The State filed a Petition Alleging Delinquency in May 2019, charging E.S. with consumption of an alcoholic beverage by a minor under Indiana Code section 7.1-5-7-7(a)(2). A fact-finding hearing was held in November 2019. The court found that E.S. had consumed an alcoholic beverage and ordered him to complete twenty hours of community service and the Youth Services Bureau Program.

[5] E.S. now appeals.

# Discussion and Decision

[6] E.S. contends that the evidence is insufficient to support the adjudication. "When the State seeks to have a juvenile adjudicated as a delinquent child for committing an act which would be a crime if committed by an adult, the State

must prove every element of the crime beyond a reasonable doubt." *E.D. v. State*, 905 N.E.2d 505, 506 (Ind. Ct. App. 2009). "In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses." *Id.* "If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication." *Id.*

[7] Indiana Code section 7.1-5-7-7 states, in relevant part, that "it is a Class C misdemeanor for a minor to knowingly . . . consume an alcoholic beverage." An "alcoholic beverage" is defined as "a liquid or solid that: (1) is, or contains, one-half percent (0.5%) or more alcohol by volume; (2) is fit for human consumption; and (3) is reasonably likely or intended to be used as a beverage." Ind. Code § 7.1-1-3-5.

[8] E.S. does not dispute that he drank from the Powerade bottle. He argues only that "[n]o evidence was presented to the Court that a liquid or solid that contained one-half percent or more alcohol by volume was ever consumed by [E.S.] on March 15, 2019." Appellant's Br. p. 9. He points out that there was no evidence of his breath smelling of alcohol or of him having bloodshot eyes, slurred speech, impaired attention or reflexes, or unsteady balance. He also notes that he was given a portable breath test that "resulted in a zero (0)." *Id.* In addition, he cites K.O.'s testimony that she "did not have the presence of

alcohol on her breath, slurred speech, bloodshot eyes or an odor of alcoholic beverage." *Id.* at 10.[1]

[9] While all of this is true, there is still ample evidence to affirm the adjudication. K.O. testified that she was familiar with the smell and taste of vodka, that she had brought vodka to school before, and that the liquid she brought to school that day was vodka. It is common knowledge that vodka is high in alcohol, and the judge was permitted to infer that K.O. was referring to vodka as it is commonly known. *See Turner v. State*, 749 N.E.2d 1205, 1209 (Ind. Ct. App. 2001). It is true that the vodka was mixed with Powerade. However, the person who did the mixing, B.N., testified that the bottle was almost empty and that he filled it to the halfway mark with vodka. Even as a mixture, this drink certainly contained the one-half percent alcohol by volume necessary to satisfy the statute. Furthermore, both assistant principal Fischer and Deputy Dietsch testified that the Powerade bottle still smelled like alcohol even when it was empty. This evidence is sufficient to support the conclusion that the Powerade bottle contained at least one-half percent of alcohol when E.S. drank out of it.[2]

---

[1] E.S. cites *Dickert v. State*, No. 32A01-0912-CR-583, 2010 WL 1953457 (Ind. Ct. App. May 17, 2010). That was an unpublished memorandum decision. Indiana Appellate Rule 65(D) provides, "Unless later designated for publication in the official reporter, a memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish res judicata, collateral estoppel, or law of the case."

[2] E.S. also argues that "[t]here was no evidence that the liquid or solid contained one half percent of alcohol by volume because no evidence was presented that the liquid located in the powerade bottle was tested by anyone from the Indiana Department of Toxicology." Appellant's Br. p. 9. However, it is not entirely clear that there was enough liquid left in the bottle to allow for a test. Deputy Dietsch testified, "It was-it was a

Affirmed.

May, J., and Robb, J., concur.

---

blue, uh, it was a Powerade bottle with a little bit of blue liquid in the bottom. Which when I-when I say a little bit of blue liquid, when you drink all your drink and you're done with it, whatever's left that comes down off the sides was in the bottle. So, minimal liquid in a blue Powerade bottle." Tr. p. 106. In any event, we have held that "while a chemical analysis of an alleged alcoholic beverage is no doubt the best way to establish its identity, circumstantial evidence tending to show that a beverage contains more than .5% alcohol by volume may be sufficient." *Turner*, 749 N.E.2d at 1209. As discussed above, there was plenty of evidence showing that the liquid in the Powerade bottle contained at least .5% alcohol by volume.