

FILED

Oct 20 2023, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Caroline B. Briggs
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Kimberly J. Brook,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 20, 2023

Court of Appeals Case No.
22A-CR-2110

Appeal from the
Cass Superior Court

The Honorable
James K. Muehlhausen, Judge

Trial Court Cause No.
09D01-1910-F6-384

**Opinion by Judge Foley**
Judge Vaidik concurs in part and dissents in part with separate opinion.
Judge Tavitas concurs in part and dissents in part with separate opinion.

**Foley, Judge.**

[1]     Kimberly J. Brook ("Brook") was convicted after a jury trial of resisting law enforcement[1] as a Class A misdemeanor, driving while suspended[2] as a Class A misdemeanor, unlawful possession or use of a legend drug[3] as a Level 6 felony, and obstruction of justice[4] as a Level 6 felony. The trial court sentenced Brook to an aggregate sentence of two years with one year executed in the Indiana Department of Correction ("DOC") and one year served on Community Corrections. On appeal, Brook raises several issues, which we consolidate and restate as:

>   I.    Whether, as a matter of first impression, the trial court abused its discretion when it denied her request to bifurcate her trial as to her driving while suspended charge, which was elevated due to a prior infraction and not a prior criminal conviction;
>
>   II.   Whether Lorazepam's status as a legend drug is a question of law that could be determined by the trial court;
>
>   III.  Whether the admission of testimony from Brook's prior attorney concerning her attempt to manufacture evidence to avoid her conviction for unlawful possession of a legend drug violated attorney-client privilege; and

---

[1] Ind. Code § 35-44.1-3-1(a)(1).

[2] I.C. § 9-24-19-2.

[3] I.C. § 16-42-19-13; I.C. § 16-42-19-27.

[4] I.C. § 35-44.1-2-2(a)(4).

IV.    Whether Brook's two-year aggregate sentence is inappropriate in light of the nature of the offense and the character of the offender.

Finding no error, we affirm the trial court.

## Facts and Procedural History

On October 27, 2019, Logansport Police Officer Tanner Prentice ("Officer Prentice") was working patrol duty when he observed a gold car being driven by a woman later identified as Brook. As the car drove past him, Officer Prentice conducted a license-plate check on the vehicle, which returned information indicating that the driver's license of the car's registered owner had been suspended. Officer Prentice reviewed the license photo of the car's owner and determined that the picture matched the physical description of the woman he observed driving the car. Based on this information, Officer Prentice initiated a traffic stop of the car.

After the car stopped in an alleyway, Officer Prentice approached the driver's side of the car, and the driver told him that her name was Kimberly Brook. At that time, Brook told Officer Prentice that "she wasn't driving" and that "the keys weren't in the ignition anymore." Tr. Vol. 2 p. 59. When Officer Prentice returned to his police car to enter Brook's information into the system, a Bureau of Motor Vehicles records check for Brook revealed that Brook was subject to two active license suspensions, one for excessive points on her license and the other for a repeat insurance violation. *Id*. at 62. Brook's suspensions became effective on May 22, 2019, and July 14, 2019, respectively, and the latest of

them did not expire until July 13, 2020. *Id.* at 62–63; Ex. Vol. p. 5. While Officer Prentice was in his police car, Brook exited her vehicle and began yelling at him, telling him, "I don't have time for this." Tr. Vol. 2 p. 64. Brook then began to walk away from the scene of the traffic stop although the traffic stop was still ongoing.

[5] Officer Prentice got out of his car and ordered Brook to stop. However, Brook did not stop and, instead, began running faster. Officer Prentice chased Brook and caught up to her in the front yard of a nearby home. When Officer Prentice attempted to take Brook into custody, she tried to back away from him and continued to "rip and wrestle her arms away" from him. *Id.* at 65. At that time, Officer Prentice used a leg sweep to get Brook on the ground and allow him to take her into custody. Once Officer Prentice had placed Brook in custody, she continued to yell profanities at him, including calling him a "punk bitch." *Id.* at 66.

[6] Brook was transported to the Cass County Jail and searched during intake. Correctional Officer Bryce Hamilton ("Officer Hamilton") performed the search of Brook's clothing. When Officer Hamilton looked through Brook's purse, he found a pill bottle containing multiple pills, one of which was marked EP904. A subsequent search on the website Drugs.com led Officer Hamilton to suspect that the pill with the EP904 marking was the drug Lorazepam. The other pills were determined to be hydrocodone. The label on the front of the pill bottle did not contain prescription information for Lorazepam. Officer Hamilton seized the pills and pill bottle and contacted Officer Prentice so that

he could retrieve the evidence. Later laboratory testing confirmed that the EP904 pill was positive for Lorazepam, which is a controlled substance.

[7] The State initially charged Brook with (1) two counts of Level 6 felony possession of a Schedule I, II, III, or IV controlled substance, (2) Class A misdemeanor resisting law enforcement, (3) Class A misdemeanor driving while suspended, and (4) Class B misdemeanor disorderly conduct. The State later amended the charging information to reflect charges of (1) Class A misdemeanor resisting law enforcement, (2) Class A misdemeanor driving while suspended, (3) Class B misdemeanor disorderly conduct, and (4) Level 6 felony unlawful possession or use of a legend drug. After this amended charging information was filed, the State filed a notice under Evidence Rule 404(b), which stated that it intended to introduce evidence that Brook "produced and provided to the State a forged prescription in an attempt to manufacture a defense to" the unlawful possession or use of a legend drug charge against her. Appellant's App. Vol. II p. 50. Prior to trial, the trial court conducted a hearing on the State's Rule 404(b) notice, during which the State called Brook's former attorney, Andrew Achey ("Achey"), to testify about statements made by Brook regarding a falsified prescription for Lorazepam she had provided to him during the course of his representation in the case. Brook objected to Achey being allowed to testify to these statements based upon the attorney-client privilege.

[8] The parties also addressed an issue raised by Brook about a "lack of clarity" in the distinction between the law regarding possession of a "controlled

substance" and possession of a "legend drug." Supp. Tr. Vol. 2 pp. 16–17. The State responded, "We're just here to talk about legend drugs and [L]orazepam is unequivocally a legend drug." *Id*. at 17. Two days later, the State moved to amend its charging information to include a count of Level 6 felony obstruction of justice based on the information conveyed by Achey in the hearing.

[9] On May 6, 2022, the trial court issued an order, in which it addressed both issues raised at the hearing. As to Brook's assertion of attorney-client privilege over her communications with Achey, the trial court found that the State made a *prima facie* showing that Brook had violated the law through her communications and "also established a relationship between the communication at issue and the *prima facie* violation." Appellant's App. Vol. II p. 73. The trial court also referenced that it may be willing to reconsider its previous order issued in April 2022, where it determined that Brook could not introduce evidence about whether "[ ][L]orazepam is a legend drug." *Id*. The trial court expressed a willingness to reconsider the ruling if Brook's witness "qualifies as an expert and his testimony is limited to the statutory definition of a legend drug found at [Indiana Code section] 16-18-2-199." *Id*. The trial court further stated that "at this stage" it "still believes the question of whether . . . [L]orazepam[ ] is a legend drug is a question of law for the [c]ourt, *J.P. v. State*, 878 N.E.2d 415 ([Ind. Ct. App.] 2007)." *Id*.

[10] On July 12, 2022, a jury trial was held. That morning, Brook filed a motion in limine requesting that the State be prohibited from introducing testimony from Achey, and the trial court, after noting its ruling at the prior hearing, concluded

that the State had made a *prima facie* showing that a "serious crime or fraud occurred" and that the State had connected the communication between Brook and Achey to the violation. The parties also addressed the trial court's proposed preliminary jury instructions. Brook objected to the State's proposed instruction regarding the driving-while-suspended charge, which stated that a person was guilty of driving while suspended if she "operates a motor vehicle on a highway less than ten years after the date on which judgment was entered for a prior unrelated violation of this section." Tr. Vol. 2 p. 10. Brook argued that the instruction should be stricken and that the proceedings should be bifurcated with a second phase to prove the prior driving violation, asserting that "having the prior conviction in front of the jury would just, it leads them to believe that she committed the crime more so." *Id.*

[11] The State opposed Brook's request for bifurcation, arguing that "the driving while suspended statute elevates what's normally an infraction, a civil judgment, to an A misdemeanor" and the "prior that we're relying on is a civil judgment, so it is not a conviction." *Id.* The trial court asked defense counsel if putting the word civil before judgment in the instruction would address the concern, and defense counsel responded that he would still have an objection "even though it's not a criminal conviction, it's still a driving while suspended and it's still something that would leave the jury to believe that she's more likely to have done this even if it was a civil judgment." *Id.* at 11. The trial court stated it would take the bifurcation request under advisement.

[12] Brook also objected to the proposed preliminary instruction regarding the elements for unlawful possession or use of a legend drug, which provided in relevant part:

> The crime of unlawful possession or use of a legend drug is defined by statute as follows:
>
> A person who knowingly possesses or uses a legend drug unless the person has a valid prescription to do so or has the order of a practitioner acting in the course of his professional practice to do so, or was provided the drug by a practitioner or is a pharmacist, commits unlawful possession or use of a legend drug, a level 6 Felony.
>
> To convict the Defendant[,] the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant
>
> 2. knowingly
>
> 3. possessed
>
> 4. Lorazepam *which the Court instructs you was classified at the time as a legend drug.*

Appellant's App. Vol. II p. 106 (emphasis added).

[13] Brook asserted that the language of the instruction essentially amounted to an instruction that "the [c]ourt is telling you [Lorazepam] is a legend drug." Tr. Vol. 2 p. 12. Brook further stated that the drug's status as a legend drug was

"something the State must prove," and the "[c]ourt just can't give that element away." *Id*. The State responded by noting that the challenged instruction was taken from the pattern instruction and that the language had been previously litigated by the parties. The State explained that the issue of whether Lorazepam qualified as a legend drug was "an issue of law," and it noted that the trial court had "actually already ruled that it was an issue of law previously." *Id*.

[14] During the jury trial, the State moved to introduce Brook's driving record as State's Exhibit 1, and Brook objected to the admission of the records only on the basis that the State failed to lay an adequate foundation. The trial court overruled the objection and ordered Exhibit 1 admitted into evidence. The State also called Brook's former physician, Dr. Carolyn Kochert ("Dr. Kochert"), who testified that she began treating Brook around the year 2017 and that she prescribed multiple medications for Brook but denied ever writing a prescription for Lorazepam. Tr. Vol. 2 p. 102. Dr. Kochert testified that she reviewed Brook's medical charts and the State's INSPECT database, which contains information about all prescriptions for controlled substances filled by pharmacies for a person, and found that neither indicated that Brook had been prescribed Lorazepam. *Id*. at 102–03.

[15] Over a continuing objection by the defense based on privilege, the State later called Brook's former counsel, Achey, as a witness, who testified that he represented Brook in the instant case and that he withdrew in 2020. Achey stated that, while he was serving as Brook's attorney, she provided him with a

copy of a receipt indicating that a prescription for Lorazepam had been filled at the Pay Less Pharmacy in Lafayette, Indiana. At that time, Brook informed Achey that the pharmacy's labels were not on her pill bottles because she did not like to carry pills in their original bottles while at work because she was afraid her pills would be stolen.

[16] Based on this information, Achey initially requested that the State dismiss the unlawful possession or use of a legend drug charge. Achey further testified that, after deposing Dr. Kochert, who denied writing the prescription, Achey contacted Brook and asked whether the prescription she provided contained false information. *Id*. at 125. Achey testified that Brook became "very apologetic" and admitted to Achey that she did not have a prescription for Lorazepam. *Id*. Brook also told Achey that the document she provided had been created either by her or by another individual. *Id*. at 126. Shortly thereafter, Achey withdrew from his representation of Brook.

[17] At the conclusion of the trial, the jury found Brook guilty of Class A misdemeanor resisting law enforcement, Class A misdemeanor driving while suspended, Level 6 felony unlawful possession or use of a legend drug, and Level 6 felony obstruction of justice. The jury acquitted Brook of Class B misdemeanor disorderly conduct. At Brook's sentencing hearing, the trial court sentenced Brook to one year executed for Class A misdemeanor resisting law enforcement, sixty days executed for Class A misdemeanor driving while suspended, two years executed for Level 6 felony unlawful possession or use of a legend drug, and two years executed for Level 6 felony obstruction of justice.

All of the sentences were to be served concurrently, resulting in an aggregate sentence of two years executed with one year to be served in the DOC and the second year to be served on Community Corrections, if eligible. Brook now appeals.

## Discussion and Decision

## I. Bifurcation

[18] Brook argues that the trial court abused its discretion when it denied her request to bifurcate the proceedings with respect to her driving while suspended charge. More specifically, Brook argues that bifurcation is required under Indiana Code section 35-38-1-2 even though her enhancement was based upon a prior civil infraction and not a prior offense.[5] This is a matter of first impression.

---

[5] In challenging the denial of her request for bifurcation, Brook takes particular issue with State's Exhibit 1, which was her driving record that the State admitted into evidence to establish her prior driving while suspended infractions. She argues that it was highly prejudicial and that if bifurcation had been granted, the exhibit would not have been admitted into evidence. We agree that one of the purposes of bifurcation is to keep prior convictions away from the jury in their initial determination of guilt for the substantive crime charged. *Hines v. State,* 794 N.E.2d 469, 472 (Ind. Ct. App. 2003), *adopted and incorporated by Hines v. State,* 801 N.E.2d 634 (Ind. 2004). Brook argues that the admission of her entire driving record, consisting of twenty-seven prior acts of poor driving, suspensions, or misconduct, deprived her of due process and portrayed her as someone with bad character. Brook conflates the issue of the admissibility of Exhibit 1 with her argument for bifurcation. Brook argues that Exhibit 1, as admitted in its entirety, was not relevant to prove her prior driving while suspended infractions and was violative of Evidence Rules 403 or 404 as being prejudicial due to its overbreadth. However, when the State sought to admit the exhibit at trial, Brook only objected as to foundation for the exhibit, which was overruled by the trial court. Therefore, to the extent that Brook is arguing that the exhibit and its contents were not relevant to her present offenses or overly prejudicial because of the overly broad contents, she has waived such argument by not raising it to the trial court. *Leatherman v. State*, 101 N.E.3d 879, 885 (Ind. Ct. App. 2018) ("It is well-established that we generally will not address an argument that was not raised in the trial court and is raised for the first time on appeal.")

[19] A trial court's decision whether to bifurcate or trifurcate a trial is subject to an abuse of discretion standard. *Russell v. State,* 997 N.E.2d 351, 354 (Ind. 2013). One of the purposes of bifurcation is to keep prior convictions away from the jury in its initial determination of guilt for the substantive crime charged. *Hines v. State,* 794 N.E.2d 469, 472 (Ind. Ct. App. 2003), *adopted and incorporated by Hines v. State,* 801 N.E.2d 634 (Ind. 2004).

[20] Here, prior to trial, when the trial court was discussing the jury instruction for Brook's charge of driving while suspended with the parties, Brook requested that part of the instruction be stricken and that the trial be bifurcated so that her prior driving while suspended infractions could be proven in a second phase. Tr. Vol. 2 p. 10. The State responded that, because Brook's priors were not convictions but were instead, civil infractions, bifurcation was not required. The trial court took the issue under advisement, and although the trial court never explicitly ruled on the request, the trial was not bifurcated.

[21] Brook was charged under Indiana Code section 9-24-19-2, which states:

> An individual who:
>
> (1) knows that the individual's driving privileges, driver's license, or permit is suspended or revoked; and
>
> (2) operates a motor vehicle upon a highway less than ten (10) years after the date on which *judgment* was entered against the individual for a prior unrelated violation of section 1 of this chapter . . .;

commits a Class A misdemeanor.

(emphasis added). Brook's driving while suspended charge was elevated to a Class A misdemeanor based upon her prior civil infraction judgment, not a prior criminal offense.

[22] Brook relies on *Landis v. State*, which found that when the State must prove a prior conviction in order to elevate the present offense, a bifurcated trial must be held where the evidence of the defendant's prior conviction and the acts which culminated in that prior conviction cannot be introduced until the jury has first decided whether the defendant is guilty of the present charge. 693 N.E.2d 570, 572 (Ind. Ct. App. 1998), *aff'd in part and vacated in part*, 704 N.E.2d 113 (Ind. 1998). *Landis* concerned the elevation of a stalking offense based upon a prior *conviction* for stalking the same victim. *Id.* at 571–72. The instant matter is distinguishable because the elevation of Brook's offense is based upon a prior civil infraction judgment.

[23] Here, we are presented with a case of first impression of whether bifurcation is required where a defendant is charged with a criminal offense that is elevated due to a prior judgment of an infraction and not a prior conviction of a criminal offense. We find no case law conclusively deciding whether bifurcation is required in such circumstances. In *Nasser v. State*, 727 N.E.2d 1105 (Ind. Ct. App. 2000), *trans. denied*, this court was faced with the specific situation we are faced with where the defendant was charged with driving while suspended as a Class A misdemeanor, which was elevated because of a prior judgement for

driving while suspended in the previous ten years. *Id*. at 1107–09. However, there, the defendant did not object to the unitary proceedings and did not request bifurcation. *Id*. at 1108. In determining that the defendant could not succeed on his claim that his due process rights were violated when he did not receive bifurcated proceedings, this court held "[i]nasmuch as the evidence at trial was offered to enhance the infraction to a Class A misdemeanor, and [the defendant] did not object to the nature of the proceedings, there is no merit to Nasser's contention under these circumstances that he was entitled to a bifurcated proceeding." *Id*. at 1109. We, therefore, found there was no merit to the defendant's contention and left "for another day the issue of whether a defendant is entitled to a bifurcated proceeding with regard to a previous adjudication for an infraction when he makes a specific and timely request for such a proceeding." *Id*. at 1109 n.2.

[24] It seems that day has come, as we conclude that Brook made a timely request for bifurcation. We begin by examining Indiana's bifurcation statute, Indiana Code section 35-34-1-2.5, which provides "if the penalty for an *offense* is . . . increased because the person was previously convicted of the *offense*, the State may seek to have the person sentenced to receive the increased penalty by alleging, on a page separate from the rest of the charging instrument, that the person was previously convicted of the *offense*." (emphases added). Indiana Code section 35-38-1-2 requires bifurcation where: "(1) the State in the manner prescribed by IC 35-34-1-2.5 sought an increased penalty by alleging that the person was previously convicted of the *offense*"; and "(2) the person was

convicted of the subsequent *offense* in a jury trial." Ind. Code § 35-38-1-2(c) (emphases added). Therefore, pursuant to statute, bifurcation is required when the State seeks to elevate an offense because a defendant has been previously convicted of the offense.

[25] However, under Indiana Code section 35-31.5-2-215, the term "offense" means a crime and does not include an infraction. Here, Brook was charged with driving while suspended elevated to a Class A misdemeanor due to the fact that judgment had been previously entered against her for a prior unrelated violation of Indiana Code section 9-24-19-1. That statute provides that an individual who operates a motor vehicle upon a highway while the individual's driver's license is suspended commits a Class A infraction. Thus, although her current criminal charge was for Class A misdemeanor driving while suspended, it was not elevated because she was previously *convicted* of the *offense*. Instead, her current offense was elevated because she previously had a civil judgment entered against her for Class A infraction driving while suspended, which is not a conviction for a criminal offense. *See State v. Hurst*, 688 N.E.2d 402, 405 (Ind. 1997) (traffic violations are considered civil proceedings), *overruled on other grounds*; *Schumm v. State*, 866 N.E.2d 781, 792 (Ind. Ct. App. 2007) (infractions are civil matters).

[26] Therefore, because bifurcation is only required under the statute when the State seeks to elevate an offense because a defendant has been previously convicted of the offense, and the term offense means crime and not infraction, we hold that when a defendant is charged with a crime elevated based upon a prior

infraction, the trial court is not required to bifurcate the proceedings. We limit our holding here to state only that bifurcation under Indiana Code section 35-38-1-2 is not required where the State seeks to elevate an offense based upon a prior civil infraction judgment. Because Brook's Class A misdemeanor driving while suspended charge was elevated due to her prior judgment for an infraction, she was not entitled to bifurcation, and the trial court did not abuse its discretion in denying her request.

## II.   Lorazepam's Status as a Legend Drug

[27]   Brook next argues that the trial court's jury instruction for the offense of unlawful possession or use of a legend drug was clearly erroneous. The trial court determined that, as a matter of law, Lorazepam is a legend drug and incorporated that conclusion in its instruction. Brook contends that the jury instruction relieved the State from its burden of proof as to a material element of the offense, and because the State failed to present evidence on that element, the evidence was not sufficient to support the conviction.

[28]   Indiana Code Chapter 16-42-19, Indiana's Legend Drug Act, criminalizes various forms of possession, use, and sale of certain prescription drugs, which are known as "legend drugs." *Knutson v. State*, 103 N.E.3d 700, 702 (Ind. Ct. App. 2018). Indiana Code section 16-42-19-13 of the Legend Drug Act, which is the statute under which Brook was charged, makes it a crime for a person to "possess or use a legend drug or a precursor" without first obtaining the drug "(1) on the prescription or drug order of a practitioner; (2) in accordance with section 11(a)(2) or 21 of this chapter; or (3) in accordance with the rules

adopted by the board of pharmacy under IC 25-26-23." The term "legend drug" is statutorily defined within the Legend Drug Act under Indiana Code Section 16-18-2-199, which provides:

> "Legend drug," for purposes of IC 16-42, means a drug that is:
>
> (1) subject to 21 U.S.C. 353(b)(1); or
>
> (2) listed in the Prescription Drug Product List as:
>
> (A) published in United States Department of Health and Human Services Approved Drug Products with Therapeutic Equivalence Evaluations, Tenth Edition, (1990); and
>
> (B) revised in United State [sic] Department of Health and Human Services, Approved Drug Products with Therapeutic Equivalence Evaluations, Cumulative Supplement to the Tenth Edition, Number 10 (1990).

The publication referred to in subsection (2) is commonly known as the "Orange Book."[6] *J.P. v. State*, 878 N.E.2d 415, 417 (Ind. Ct. App. 2007).

---

[6] "The publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the Orange Book) identifies drug products approved on the basis of safety and effectiveness by the Food and Drug Administration (FDA) under the Federal Food, Drug, and Cosmetic Act (the Act) and related patent and exclusivity information." *See* https://www.fda.gov/drugs/drug-approvals-and-databases/approved-drug-products-therapeutic-equivalence-evaluations-orange-book [https://perma.cc/SSC8-FKL3] (last visited Aug. 2, 2023).

[29]     Therefore, depending on the nature of the drug at issue, the State can prove that a particular substance satisfies the definition of legend drug under the statute in one of two ways. First, if a drug is identified in court by a name specifically designated as a legend drug or controlled substance by the Indiana Code, then the State has proven as a matter of law the drug is a legend drug. *Id.* (citing *White v. State,* 316 N.E.2d 699, 702 (Ind. Ct. App. 1974)). "If a drug is identified in court by a name specifically designated as a controlled substance by the Indiana Code, then the State has proven as a matter of law the drug is a controlled substance." *Barnett v. State*, 579 N.E.2d 84, 86 (Ind. Ct. App. 1991), *trans. denied*. Second, if the substance is not specifically enumerated by the Indiana Code as a legend drug or a controlled substance, the State must offer extrinsic evidence to prove the substance falls within the Indiana Code's definition. *Id.*

[30]     Here, Lorazepam's status as a legend drug fits within the first of these categories. This particular issue was addressed by this court in *J.P. v. State*, where the defendant argued that the State did not present sufficient evidence at trial to prove that the drug Ritalin satisfied the definition of legend drug under the Legend Drug Act. 878 N.E.2d at 417. The defendant claimed that, although the State presented evidence that "Ritalin is a legend drug," it failed to meet its burden of proof because it did not submit a copy of the Orange Book into evidence at her trial. *Id.* This court, in rejecting this claim, noted that it had previously been held that "where the Uniform Narcotic Drug Act identifies a specific drug by name and designates it a narcotic, 'a conviction may be

upheld as the trial court need only refer to the exact words of the statutory definition and determine the substance is a narcotic as a matter of law.'" *Id*. at 417–18 (citing *White*, 316 N.E.2d at 702). This court recognized that Indiana Code section 16-18-2-199 "incorporates by reference" both 21 U.S.C. § 353(b)(1) and "the Orange book, which expressly includes Ritalin in its list of drugs." *Id*. at 418. While the Orange Book is not a statute, this court reasoned that it was "promulgated by a federal agency" and held that "the statute properly incorporates the Orange Book by reference." *Id*. Therefore, the court concluded that "Ritalin is, as a matter of law, specifically listed as a legend drug under Indiana Code Section 16-1-8-2-199," and the State presented sufficient evidence by having the trial court look to the statutory definition and determine that the substance met that definition. *Id*.

[31]    The holding in *J.P.* compels a similar conclusion here. At trial, evidence was presented that one of the pills found inside Brook's purse during intake at the jail contained the inscription EP904, was identified as Lorazepam, and was later tested and found to be Lorazepam, a controlled substance. Like the drug at issue in *J.P.*, Lorazepam appears in the Orange Book. *See* Federal Drug Administration, *Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations*, https://www.fda.gov/drugs/drug-approvals-and-databases/approved-drug-products-therapeutic-equivalence-evaluations-orange-book#Publications [https://perma.cc/FMK6-EJVZ] (last visited Aug. 2, 2023). Therefore, under *J.P.*, the trial court in the present case could find that the State established Lorazepam's status as a legend drug as a matter of law because

Lorazepam is a legend drug under the definition contained in Indiana Code section 16-18-2-199. There is no dispute in this case that Lorazepam appeared in the Orange Book, so the drug falls within the class of medications incorporated by reference into Indiana's statutory definition for the term legend drug. *See* I.C. § 16-18-2-199. Whether Lorazepam meets the statutory definition of "legend drug" was not a question of fact that the State was required to prove to the jury, but instead a matter of law that the trial court could decide by referring to the statutory language. *See J.P.*, 878 N.E.2d at 417; *Barnett*, 579 N.E.2d at 86.

[32] Accordingly, because Lorazepam's status as a legend drug was not an issue of fact, the trial court did not erroneously invade the province of the jury by giving instructions that created a mandatory presumption indicating that the substance was classified as a legend drug. The purpose of jury instructions is to inform the jury about the law without misleading the jury and to help it arrive at a just, fair, and correct verdict. *Wallen v. State*, 28 N.E.3d 328, 330–31 (Ind. Ct. App. 2015), *trans. denied*. We review a trial court's instructions to the jury for an abuse of discretion. *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015), *cert. denied*. An abuse of discretion arises when the instruction is erroneous, and the instructions taken as a whole misstate the law or otherwise mislead the jury. *Id*. at 484–85.

[33] "The Due Process Clause prohibits the State from relying upon an evidentiary presumption that has the effect of relieving it of its burden to prove every essential element of a crime beyond a reasonable doubt." *Pattison v. State*, 54

N.E.3d 361, 365 (Ind. 2016) (citing *Sandstrom v. Montana,* 442 U.S. 510, 524 (1979); *McCorker v. State,* 797 N.E.2d 257, 263 (Ind. 2003)). "A mandatory presumption instructs the jury that it *must* infer the presumed facts if the State proves certain predicate facts," and if it amounts to a shift in the burden of proof, it is unconstitutional. *Id.* (quoting *Winegeart v. State,* 665 N.E.2d 893, 904 (Ind. 1996)) (emphasis added).

[34] Here, the challenged jury instructions, Preliminary Instruction 8 and Final Instruction 11, informed the jury about a matter of law—that Lorazepam was classified as a legend drug at the time Brook committed the offense—but did not require the jury to reach any factual inferences. Under both instructions, the factual question of whether the State proved that the pill found in Brook's possession was in fact Lorazepam was left for the jurors to decide as an element of the charged offense. Therefore, the instructions left the factual question to the jury, while informing the jury that Lorazepam satisfied the legal definition for the term legend drug. We conclude that the trial court's instructions did not impermissibly shift the State's burden of proof as to any issue to be decided by the jury, and the trial court did not abuse its discretion.

[35] Likewise, the State presented sufficient evidence to support Brook's conviction because it was not required to present additional evidence to establish Lorazepam's status as a legend drug. We will affirm a conviction unless, considering only the evidence most favorable to the judgment together with all reasonable inferences drawn therefrom, no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Love v. State*, 73

N.E.3d 693, 696 (Ind. 2017). As previously determined, the trial court was free to find—and did find—that Lorazepam was a legend drug under Section 16-18-2-199. Therefore, the jury did not need to decide whether Lorazepam was a legend drug, but only whether the substance found in Brook's possession was Lorazepam. The evidence presented at trial was sufficient to prove this as the forensic toxicologist's testimony and the toxicology report both demonstrated that the pill found in Brook's purse tested positive for Lorazepam. Tr. Vol. 2 pp. 92–93. We conclude that sufficient evidence was presented to prove that Brook possessed the legend drug Lorazepam and to support her conviction.

## III.   Admission of Testimony

[36]   Brook also argues that the trial court abused its discretion when it ruled that her prior attorney, Achey, was required to testify regarding communications related to Brook's attempt to present a false prescription record. The trial court has broad discretion to rule on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). Generally, evidentiary rulings are reviewed for an abuse of discretion, and we will reverse when admission is clearly against the logic and effect of the facts and circumstances. *Id.*

[37]   Brook contends that the admission of the testimony of Achey violated attorney-client privilege and that, even if he could testify regarding Brook's presentation of the fraudulent prescription record, any further questioning exceeded the fraud and was not permissible. "'The attorney-client privilege protects against judicially compelled disclosure of confidential information.'" *Skinner v. State*,

920 N.E.2d 263, 266 (Ind. Ct. App. 2010) (quoting *Lahr v. State,* 731 N.E.2d 479, 482 (Ind. Ct. App. 2000)). Indiana Code Section 34-46-3-1(a) provides that: "Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself. *Lahr*, 731 N.E.2d at 482. "The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). Furthermore, the privilege allows both the attorney and the client to give complete and confidential information, so that both may be fully advised regarding the attorney's services to the client, and the client is assured that confidences are not violated. *Id.*

[38] This privilege, however, is not absolute and "sometimes the larger societal interest in preventing illegal conduct outweighs the equally important interest of safeguarding confidential communications." *Id*. Pertinent here, Rule of Professional Conduct 1.6(b)(2) creates an exception to the attorney-client privilege that allows an attorney to reveal "information relating to the representation of a client to the extent the lawyer reasonably believes necessary" to "prevent the client from committing a crime or from committing fraud that is reasonably certain to result in substantial injury to the financial

interests or property of another and in furtherance of which the client has used or is using the lawyer's services[.]" We use a two-part test to determine whether the crime-fraud exception applies in a given case: (1) the moving party is required to "make a prima facie showing that a sufficiently serious crime or fraud occurred"; and (2) the moving party must show that "some relationship between the communication at issue and the prima facie violation exists." *Id*. at 483 (citing *United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997)). "In order for the moving party to satisfy the prima facie showing, the evidence presented must be such that a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud." *Id*. (quotations omitted).

[39] Here, Brook's communications with Achey were not privileged because they were made for the purpose of perpetrating a fraud on the State and trial court and for the purpose of committing the crime of obstruction of justice. Achey's trial testimony revealed that Brook provided him with a copy of a receipt indicating that she had been prescribed Lorazepam by Dr. Kochert and that a prescription for Lorazepam had been filled at a Pay Less Pharmacy in Lafayette. Tr. Vol. 2 p. 118. Brook also told Achey that she did not carry the pills in their original pill bottle to work because she was nervous the pills would be stolen. *Id*. After Dr. Kochert was deposed and testified that she had never prescribed Lorazepam to Brook, Brook became "very apologetic" and admitted to Achey that she did not have a valid prescription for Lorazepam and that the document she had presented to him had been created either by herself or another individual. *Id*. at 125–26. This evidence provided a reasonable basis

upon which a prudent person could have suspected that Brook was attempting to commit a fraud on the court system and was committing the crime of obstruction of justice. *See Lahr*, 731 N.E.2d at 483. Further, the State demonstrated a relationship between the communications and the attempted fraud because, in providing the fraudulent prescription record to Achey, Brook intended to use him to attempt to obtain dismissal of the unlawful possession or use of a legend drug charge against her. We, therefore, find that both parts of the test from *Lahr* were met in this case.

[40] Brook asserts that the attorney-client privilege could give way only if Achey was involved in the perpetration of her fraud. Brook reads *Lahr* as only allowing the admission of attorney-client communications when they were made for the purpose of committing or continuing a crime or fraud. And therefore, because the trial court found "no indication [Achey] did anything wrong," it was an error for the trial court to allow the statements to be admitted. Supp. Tr. Vol. 2 p. 24. However, in *Lahr*, the defendant forged two letters for the purpose of bolstering his self-defense argument and enlisted the aid of his attorney in furtherance of a continuing crime or fraud, and this court held that the "information concerning this subterfuge is not protected by the attorney-client privilege." *Lahr*, 731 N.E.2d at 484. Both here, and in *Lahr*, the client used the attorney, by presenting the forged or false documents as evidence in a criminal proceeding, to perpetuate the crime or fraud. *Lahr* did not limit admission of attorney-client communications to only situations where the attorney had culpability for the perpetration of the crime. Therefore, we conclude that

Brook's communications to Achey fell within the crime-fraud exception to the attorney-client privilege, and the trial court did not abuse its discretion when it admitted them into evidence.

## IV. Sentencing

[41] Brook argues that her two-year sentence is inappropriate. The Indiana Constitution authorizes appellate review and revision of a trial court's sentencing decision. *See* Ind. Const. art. 7, §§ 4, 6; *Jackson v. State*, 145 N.E.3d 783, 784 (Ind. 2020). "That authority is implemented through Appellate Rule 7(B), which permits an appellate court to revise a sentence if, after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender." *Faith v. State*, 131 N.E.3d 158, 159 (Ind. 2019).

[42] Our review under Appellate Rule 7(B) focuses on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We generally defer to the trial court's decision, and our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the

defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[43] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as the appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). Brook was convicted of two Level 6 felonies and two Class A misdemeanors. A Level 6 felony carries a possible sentence of between six months and two-and-a-half years with an advisory sentence of one year. I.C. § 35-50-2-7(b). A Class A misdemeanor carries a possible maximum sentence of one year. I.C. § 35-50-3-2. The trial court sentenced Brook to two years for her conviction for Level 6 felony unlawful possession or use of a legend drug, two years for Level 6 felony obstruction of justice, one year for Class A misdemeanor resisting law enforcement, and sixty days for Class A misdemeanor. All of the sentences were ordered to run concurrently for a total of two years, with one year served in the DOC and the second year to be served in Community Corrections, if eligible.

[44] As to the nature of her offense, to show her sentence is inappropriate, Brook must portray the nature of her offense in a positive light, "such as accompanied by restraint, regard, and lack of brutality." *Stephenson*, 29 N.E.3d at 122. The circumstances of this case demonstrated that Brook engaged in several attempts over the course of the case to avoid being held accountable for her criminal behavior. Brook was initially pulled over for suspicion of driving while suspended. When the officer approached her car, Brook stated that "she wasn't

driving" and that "the keys weren't in the ignition anymore" although the officer had just observed her driving the car, and no one else was in the vehicle. Tr. Vol. 2 p. 59. When the officer entered Brook's information into the system, a BMV records check for Brook revealed that she was subject to two active license suspensions. While the traffic stop was still in process, Brook exited her vehicle and began yelling at the officer and told him that she did not "have time for this" and began to walk away from the scene. *Id*. at 64. She was ordered to stop and began running away. When the officer caught her, she continued to resist by backing away from him and pulling her arms away from him. When she was booked into jail, a pill was found in her purse that was later identified as Lorazepam, for which Brook did not have a prescription. Brook lied to her attorney and presented a false prescription document purporting to show that she had a prescription for Lorazepam. Because of the falsified document Brook gave to her attorney and the representations she made about its accuracy, her attorney requested dismissal of the legend drug charge against her. Brook has failed to portray the nature of her offenses in a positive light by showing restraint, regard, and lack of brutality.

[45] As to her character, Brook argues that she is not one of the worst offenders and that her criminal history does not warrant the sentence imposed by the trial court. The character of the offender is found in what we learn of her life and conduct. *Merriweather v. State*, 151 N.E.3d 1281, 1286 (Ind. Ct. App. 2020). "A defendant's criminal history is one relevant factor in analyzing character, the significance of which varies based on the 'gravity, nature, and number of

prior offenses in relation to the current offense.'" *Smoots v. State*, 172 N.E.3d 1279, 1290 (Ind. Ct App. 2021) (quoting *Rutherford v. State,* 866 N.E.2d 867, 874 (Ind. Ct. App. 2007)). Even a minor criminal history reflects poorly on a defendant's character for the purposes of sentencing. *Id.*

[46] Looking to her criminal history, Brook has a number of criminal convictions, including convictions for driving while suspended, operating a vehicle while intoxicated, theft, and conversion. Several of her convictions were for driving-related offenses and are similar to her present offense of driving while suspended. Further, during the course of this case, Brook displayed deceitful and dishonest behavior that reflects poorly on her character. Brook was charged with obstruction of justice for presenting her attorney with a fraudulent document that she purported to show that she had a prescription for the Lorazepam pill found in her possession. This dishonesty was only discovered when Brook's doctor was deposed, which was after Brook's attorney had unknowingly presented the fake document to the State and requested a dismissal of the charge. Additionally, Brook also repeatedly lied during her presentence investigation, stating both that she had no close friends that have a criminal history and that she "only uses prescribed medications," which was proven false since she did not have a prescription for the Lorazepam found in her possession. Appellant's App. Vol. II pp. 166–67. As to her relationship with people who have criminal history, at sentencing, Brook continued to be dishonest when she asserted that she was no longer involved in a relationship with a person who had multiple felony convictions despite recorded phone calls

which indicated that Brook was still in a romantic relationship with that individual and had spoken to him recently. Tr. Vol. 2 pp. 179–82. Therefore, during the course of her underlying prosecution, Brook engaged in numerous dishonest acts intended to evade accountability for her criminal behavior. Consequently, Brook has not met her burden to show "substantial virtuous traits or persistent examples of good character" such that her requested reduction of her sentence is warranted based on her character. *Stephenson*, 29 N.E.3d at 122. We do not find that her sentence is inappropriate in light of her character.

[47] Based on the facts in the record, neither the nature of Brook's crimes nor her character merit a lesser sentence, and she has not shown that her two-year sentence is inappropriate.

## Conclusion

[48] We conclude that the trial court did not abuse its discretion when it denied Brook's request for bifurcation as her driving while suspended charge was elevated based on a prior infraction and not a criminal offense. We also hold that there was no abuse of discretion in instructing the jury and that the State presented sufficient evidence to support Brook's conviction for possession of a legend drug because the trial court could find that the State established Lorazepam's status as a legend drug as a matter of law. Further, we do not find that the trial court abused its discretion when it ruled that Brook's prior attorney was required to testify regarding communications related to Brook's attempt to

present a false prescription record. Lastly, we conclude that Brook's sentence is not inappropriate.

[49] Affirmed.

Vaidik, J., concurs in part and dissents in part with separate opinion.

Tavitas, J., concurs in part and dissents in part with separate opinion.

**Vaidik, Judge, concurring in part and dissenting in part.**

[50] I concur with the lead opinion on the issues of jury instructions, admission of evidence, and sentencing. However, I respectfully dissent on the issue of bifurcating the driving-while-suspended charge.

[51] Driving while suspended is generally a Class A infraction, Ind. Code § 9-24-19-1, but a second violation within ten years is a Class A misdemeanor, I.C. § 9-24-19-2. Brook was charged with the Class A misdemeanor and asked for the trial of that charge to be bifurcated so the jury wouldn't learn about her prior violation before deciding whether she committed the new violation. And the trial court seemed to agree that bifurcation was appropriate. When Brook's attorney made the request, the court responded, "You know, he may have a point on that one." Tr. Vol 2 p. 10. After further discussion, the court added, "I'm inclined to go ahead and bifurcate[.]" *Id.* at 11. But then, for reasons unclear from the record, the court allowed the trial to proceed without bifurcation. As a result, the jury was informed of Brook's driving record, which includes not only the prior driving-while-suspended infraction but many other violations and suspensions.

[52] In affirming on this issue, the lead opinion focuses its discussion on Indiana Code section 35-38-1-2(c), which provides:

If:

> (1) the state in the manner prescribed by IC 35-34-1-2.5 sought an increased penalty by alleging that the person was previously convicted of the offense; and

> (2) the person was convicted of the subsequent offense in a jury trial;

> the jury shall reconvene for the sentencing hearing. The person shall be sentenced to receive the increased penalty if the jury (or the court, if the trial is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had a previous conviction for the offense.

The lead opinion correctly notes that this statute expressly **requires** bifurcation only when the prior violation at issue was a criminal "offense," which means a felony or misdemeanor. *See* I.C. § 35-31.5-2-215. But it is also true that nothing in the statute expressly **limits** bifurcation to that situation. The statute simply doesn't address whether bifurcation is required where, as here, the prior violation is an infraction rather than a criminal offense. Therefore, we are left with the fundamental legal principles underlying the concept of bifurcation. And those principles—due process and the general prohibition on character evidence—are implicated regardless of whether the prior violation is a criminal offense or an infraction.

[53] More than fifty years ago, our Supreme Court held that a defendant had a due-process right to bifurcation of his jury trial when he was charged with safe

burglary and being a habitual criminal, based on prior convictions. *Lawrence v. State*, 286 N.E.2d 830 (Ind. 1972). The Court explained:

> To be admissible, evidence must logically tend to prove a material fact. Accordingly, evidence of prior crimes is generally inadmissible in a criminal case, because it has no tendency to establish the guilt or innocence of the accused but, if effective at all, could serve only to prejudice or mislead or excite the minds and inflame the passions of the jury.

> In the principal case no showing was made that evidence of the defendant's prior crimes was in any manner relevant to the safe burglary charge. Its sole relevance lay in its support of the habitual criminal charge.

> Inherent in [allowing a combined trial on the new charge and the habitual charge] is the belief that the jury can consider the prior convictions for the purpose of determining the status of habitual criminal, and at the same time make an independent determination of guilt on the crime charged solely on their evaluation of the evidence presented to support that charge. It is highly improbable that twelve jurors can be found with sufficient mental discipline to compartmentalize the evidence.

> The mental manipulation required by [a combined trial] would be difficult for one specially trained in the rules of evidence, and we would be less than realistic to expect evidence of prior convictions not to influence the jurors' determination of guilt or innocence on the principal offense.

*Id.* at 832–33 (cleaned up). The right to bifurcation recognized in *Lawrence* was later extended from the habitual-offender context to "cases where prior convictions serve to elevate a present crime or enhance the penalty for a present

conviction." *Spearman v. State*, 744 N.E.2d 545, 547 (Ind. Ct. App. 2001), *reh'g denied*, *trans. denied*.

[54] The due-process concerns first articulated in *Lawrence* are inherent in Evidence Rule 404, which governs the admissibility of character evidence. As relevant here, Rule 404(b)(1) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." In criminal cases, the purpose of this rule is to prevent the jury from indulging in the so-called "forbidden inference" that the defendant's prior bad conduct suggests present guilt. *Fairbanks v. State*, 119 N.E.3d 564, 568 (Ind. 2019). As noted by the lead opinion, the purpose of bifurcation is the same: "to keep prior convictions away from the jury in its initial determination of guilt for the substantive crime charged." Slip op. at ¶19 (citing *Hines v. State*, 794 N.E.2d 469, 472 (Ind. Ct. App. 2003), *adopted and incorporated by Hines v. State*, 801 N.E.2d 634 (Ind. 2004)). Ultimately, then, bifurcation is a 404(b) issue in a case like this.

[55] The lead opinion doesn't meaningfully engage with these important principles, proceeding as though Brook's argument is limited to Section 35-38-1-2(c). Slip op. at ¶18. I disagree. That statute was not the basis for Brook's bifurcation request in the trial court, and it is not the primary basis for her argument on appeal. At trial, Brook argued that "having the prior conviction in front of the jury would just, it leads them to believe that she committed the crime more so." Tr. Vol 2 p. 10. That is a 404(b) argument. And the main thrust of her argument on appeal is that allowing evidence of her prior violations "was

prejudicial to her fundamental rights because it was a wholesale attack on her character in violation of clearly established law." Appellant's Br. p. 18. Again, that is a 404(b) argument. Therefore, the broader due-process/404(b) argument for bifurcation is squarely before us.

[56] That being the case, I see no reason not to apply those broad principles to Brook's situation merely because the prior violation at issue was an infraction rather than a criminal offense. Based on that prior infraction, Brook's current driving-while-suspended charge was elevated to a Class A misdemeanor, meaning that she faced up to a year in jail and a fine of up to $5,000 on that count. *See* I.C. § 35-50-3-2. Those are real criminal consequences. And there is little doubt that the jury was more likely to find Brook guilty on the current driving-while-suspended charge once it learned she had previously committed the same violation. Therefore, I would hold that due-process principles and Evidence Rule 404(b) entitled Brook to bifurcation even though Section 35-38-1-2(c) did not, and I would reverse her driving-while-suspended conviction.

[57] Finally, even though I believe a defendant facing an increased penalty based on a prior infraction is entitled to bifurcation under due-process principles and Evidence Rule 404(b), I encourage the General Assembly to expand Section 35-

38-1-2(c) to include that situation. Such an amendment would further clarify

and solidify this crucial right.[7]

---

[7] Comparing the driving-while-suspended statutes with the driving-without-having-received-a-license statute highlights the flaw I see in the current version of Section 35-38-1-2(c). Like a second instance of driving while suspended, a second instance of driving without having received a license is a Class A misdemeanor. I.C. § 9-24-18-1(a). But whereas the first instance of driving while suspended is a Class A infraction, which is not a criminal "offense," the first instance of driving without having received a license is a Class C misdemeanor, *id.*, which is a criminal "offense." Oddly, this means that while a person charged with the Class A misdemeanor driving without having received a license is entitled to bifurcation under Section 35-38-1-2(c), a person charged with the Class A misdemeanor driving while suspended is not, due solely to the classification of the prior violation. I can't imagine the General Assembly considered and intended this disparate outcome.

**Tavitas, Judge, concurring in part and dissenting in part.**

[58] I concur with Judge Foley's opinion regarding Issues I, III, and IV. I respectfully dissent, however, from the majority's holding that the trial court did not abuse its discretion in instructing the jury with regard to the elements of the crime of possession of a legend drug.

[59] The trial court instructed the jury that, to convict Brook of possession of a legend drug, the State was required to prove beyond a reasonable doubt that (1) Brook, (2) knowingly, (3) possessed, (4) "Lorazepam, which the Court instructs you was classified as a legend drug." Appellant's App. Vol. II pp. 106, 138. By instructing the jury that Lorazepam was classified as a legend drug, the trial court relieved the State of its burden of proving each element of the offense. This is particularly concerning here because the State presented no evidence at all that Lorazepam is a legend drug. Instead, the State merely demonstrated to the trial court that Lorazepam is listed in the "Orange Book" promulgated by the federal government, and the trial court then instructed the jury that Lorazepam was, as a matter of law, a legend drug.

[60] The majority considers this not to be a problem because this Court has previously held that "[i]f a drug is identified in court by a name specifically designated *as a controlled substance by the Indiana Code*, then the State has proven as a matter of law the drug is a controlled substance." *J.P. v. State*, 878 N.E.2d 415, 417 (Ind. Ct. App. 2007) (citing *Barnett v. State*, 579 N.E.2d 84, 86 (Ind. Ct. App. 1991), *trans. denied*) (emphasis added). "If the substance is not specifically

enumerated by the Code as a controlled substance, the State must offer extrinsic evidence to prove the substance falls within the Code's definition." *Id*.

[61]     Here, Lorazepam is not specifically enumerated by the Indiana Code as a legend drug.[8] It is instead listed in a federal publication that is referenced by the Indiana Code section defining a legend drug. Accordingly, I believe that the State was required to offer extrinsic evidence—such as the relevant portion of the Orange Book—to prove to the jury that Lorazepam is a legend drug. *See J.P.*, 878 N.E.2d at 417. By instructing the jury in the manner it did, the trial court gave the jury an impermissible mandatory instruction. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016) (defining a mandatory presumption as an instruction which informs the jury that it "must infer the presumed facts if the State proves certain predicate facts," which, "if it amounts to a shift in the burden of proof, it is unconstitutional.") (citations omitted).[9] The trial court here recognized that its instruction was mandatory, stating: "The [] mandatory

---

[8] It is, however, specifically enumerated as a Schedule IV controlled substance. *See* Ind. Code § 35-48-2-10(c). The State, however, amended the charging information to allege that Brook committed possession of a legend drug, not possession of a controlled substance.

[9] Although not raised by Brook on appeal, I cannot ignore the fact that the trial court's instruction also invaded the constitutional role of the jury to be the exclusive judge of both the law and the facts in criminal cases. Article I, Section 19 of the Indiana Constitution provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Our Supreme Court has repeatedly held that "[t]his provision requires that a jury in any criminal case be allowed to decide not only what the facts are but also what the law is and, consequently, how the law applies to the facts." *Harris v. State*, 211 N.E.3d 929, 937 (Ind. 2023). Thus, even when the State has presented incontrovertible proof of a defendant's prior felony convictions, the jury still has the right to determine whether the defendant is, or is not, a habitual offender as a matter of law. *Id.* (citing *Seay v. State*, 698 N.E.2d 732, 737 (Ind. 1998)). The trial court here did properly instruct the jury that it was the exclusive judge of the law and the facts. Tr. Vol. 2 p. 154. Yet, by informing the jury that Lorazepam was, as a matter of law, a legend drug, the trial court invaded the role of the jury to be the exclusive judge of the law and the facts.

instruction o[f] the Court is telling you Lorazepam is a legend drug." Tr. Vol. 2 p. 13.

[62] Here, the trial court's instruction informed the jury that, if the State proved that Brook possessed Lorazepam, the State accordingly proved that this substance was a legend drug. Because this unconstitutionally relieved the State of its burden of proving all the elements of the offense, and because the State presented no evidence at all to the jury that Lorazepam is a legend drug, I would reverse Brook's conviction for possession of a legend drug and remand for retrial on this issue.